[No. B073941. Second Dist., Div. Seven. Dec. 8, 1993.]

FREEDOM FINANCIAL THRIFT & LOAN, Plaintiff and Appellant, v. GOLDEN PACIFIC BANK, Defendant and Respondent.

**COUNSEL**

Washor & Associates, Lawrence I. Washor and Eileen Palmer for Plaintiff and Appellant.

Hall & Bailey and Donald R. Hall for Defendant and Respondent.

**OPINION**

JOHNSON, J.—Plaintiff and appellant, Freedom Financial Thrift & Loan (Freedom), appeals from a judgment of dismissal following the sustaining of a demurrer to its original complaint filed by defendant and respondent, Golden Pacific Bank (Golden). This case presents the issue whether a second lending institution, not a party to the original loan, can be responsible for a deficiency in the payoff of the original loan when the first lender's payoff statement inadvertently understated the amount required to retire the loan. The trial court held under Civil Code section 2943 the borrower was exclusively responsible for the balance due. We affirm.

FACTS AND PROCEEDINGS BELOW

On October 29, 1992, Freedom filed an action against Golden and the debtors on the loan, Quality Striping, a general partnership, and its individual partners. The complaint alleged causes of action for breach of contract, breach of written guarantee, account stated, open book account, conversion, declaratory relief, reformation, specific performance, and cancellation of a written instrument. Because this case is before the court after the sustaining of a demurrer without leave to amend, the following facts are taken from the complaint and are deemed true for purposes of this appeal. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

In December 1990 and February 1991, FSFG Leasing Corporation (FSFG) entered into two equipment leases with Quality Striping. Both equipment leases were unconditionally guaranteed by the individual partners. The first lease was in the amount of $396,459—and was secured by two deeds of trust on real property. The second lease was in the amount of $34,209—and was secured by the equipment which was the subject of the lease.

Shortly thereafter, Freedom accepted an assignment without recourse of both equipment leases from FSFG.

On September 8, 1992, Freedom received a request for a payoff statement from Golden in order to pay off the two loans. Freedom sent the requested

payoff demand statement on September 11, 1992. The amount of the demand was for $245,999.73 and expired by its own terms on September 25, 1992.

On September 28, 1992, Freedom prepared and sent a second payoff statement to Golden. The demand in this payoff statement was for $211,432.15. Through error and inadvertence, this demand understated the payoff amount by $34,567.58. On October 1, 1992, Freedom received a check for $211,432.15 from Golden which Freedom accepted.

Freedom realized its error the next day and demanded the balance due on the loan from Golden. A representative at Golden stated he noticed the discrepancy but paid the lesser amount because the Small Business Administration, which was guaranteeing Quality Striping's loan from Golden, liked the fact Quality Striping would have additional working capital.

When Freedom received no response from either Golden or Quality Striping and its partners, Freedom filed suit for the balance due on the loan.

Golden demurred to the original complaint. The trial court acknowledged Civil Code section 2943 controlled the proper disposition of the matter. The court agreed a party should not be entitled to rely in bad faith on a lender's erroneous payoff statement if that party is unjustly enriched because of the error. However, the court concluded the statutory provision dictated the lender's exclusive remedy in this circumstance was against the borrower and sustained Golden's demurrer without leave to amend.

Later that day the court went on the record to state: "On closer reflection and review of the pleadings, the court notes that defendant Golden State Bank actually was never obligated to Freedom Financial Trust and Loan to begin with. That is to say, the two of them were never in privity of agreement. Such being the case, the Court's concerns expressed of record about 'unjust enrichment' to Golden State are not applicable to the facts at hand. Rather, Golden State, is purely a volunteer, paying off the creditors of Quality Striping by means of funds that represent Quality's debt-consolidation loan."

Judgment was entered dismissing Golden from the action and this appeal followed.

## Discussion

I. *The Plain Language of the Statute Does Not Expressly Permit Actions Against Parties Other Than an Obligor for Any Balance Due on the Payoff of a Loan Due to a Beneficiary's Error in Preparing a Payoff Demand Statement.*

 Civil Code section 2943 defines the procedures to pay off secured loans.[1] Subdivision (d)(3) of section 2943 defines a beneficiary's remedies in the event a mistake in a payoff demand statement results in an underpayment of the amount actually due on the note. This particular subdivision of section 2943 has not been the subject of any reported decision. Consequently, our task on appeal is one of statutory interpretation. Statutory interpretation presents a pure question of law and is thus subject to our independent, de novo review. (*Twain Harte Homeowners Assn.* v. *County of Tuolumne* (1982) 138 Cal.App.3d 664, 674 [188 Cal.Rptr. 233]; *Estate of Coate* (1979) 98 Cal.App.3d 982 [159 Cal.Rptr. 794].)

Section 2943 was amended in 1988 to establish mechanisms by which an entitled person may obtain information regarding the status of an obligation secured by a deed of trust or mortgage. The statute details the type of information a beneficiary must provide in a payoff statement and specifies when an entitled person is entitled to rely on the amount stated in the payoff demand statement. The particular subdivisions of section 2943 relevant to this appeal provide:

"(d)(1) A beneficiary statement or payoff demand statement may be relied upon by the entitled person or his or her authorized agent in accordance with its terms, including with respect to the payoff demand statement reliance for the purpose of establishing the amount necessary to pay the obligation in full. If the beneficiary notifies the entitled person or his or her authorized agent of any amendment to the statement, then the amended statement may be relied upon by the entitled person or his or her authorized agent as provided in this subdivision.

"(2) If notification of any amendment to the statement is not given in writing, then a written amendment to the statement shall be delivered to the entitled person or his or her authorized agent no later than the next business day after notification."

Subdivision (d)(3) of section 2943 describes a beneficiary's remedy in the event the payoff demand statement understates the actual balance due on a loan:

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

"(3) Upon the dates specified in subparagraphs (A) and (B) any sums that were due and for any reason not included in the statement or amended statement shall continue to be recoverable by the beneficiary as an unsecured obligation of the obligor pursuant to the terms of the note and existing provisions of law.

"(A) If the transaction is voluntary, the entitled party or his or her authorized agent may rely upon the statement or amended statement upon the earlier of (i) the close of escrow, (ii) transfer of title, or (iii) recordation of a lien.

"(B) If the loan is subject to a recorded notice of default or a filed complaint commencing a judicial foreclosure, the entitled party or his or her authorized agent may rely upon the statement or amended statement upon the acceptance of the last and highest bid at a trustee's sale or a court supervised sale."

In analyzing the statutory provision we "start[ ] from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] In determining intent, we look first to the language of the statute, giving effect to its 'plain meaning.' [Citation.]" (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209 [271 Cal.Rptr. 191, 793 P.2d 524].) "If the words, given their ordinary and popular meaning, are reasonably free from uncertainty there is no need for construction, and we may not indulge in it." (*Comite de Padres de Familia* v. *Honig* (1987) 192 Cal.App.3d 528, 532 [237 Cal.Rptr. 517].) This is so because "[i]f a statute's language is clear, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." (*Kizer* v. *Hanna* (1989) 48 Cal.3d 1, 8 [255 Cal.Rptr. 412, 767 P.2d 679].)

The language of section 2943, subdivision (d)(3) is clear and unambiguous as to the question presented in this appeal. That subdivision states when a beneficiary, for whatever reason, understates the amount necessary to retire a loan in a payoff demand statement, the beneficiary may recover any sums still owing from the "obligor" as an unsecured debt. ■ The standard definition of the word "obligor" is: "A promisor. The person who has engaged to perform some obligation. Person obligated under a contract or bond." (Black's Law Dict. (6th ed. 1990) p. 1076, col. 1.) ■ Thus, under the common meaning of the word "obligor," the statute provides Freedom may recover the unpaid balance from the person who promised to repay the loan and who is obligated under the terms of the contract to repay the loan. In this particular case the "obligor" would only be Quality Striping

and its partners because they are the only ones who executed the note and promised to repay the loan according to the terms of the note.

The Legislature's specific choice of the obligor as the person or entity to whom a lender must look to recover any balance is highly persuasive, if not dispositive of the issue of the persons the Legislature intended to be responsible for any underpayment. (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873] [specific classifications in Unruh Civil Rights Act of race, sex, religion and the like without mentioning economic discrimination indicates Legislature intended to exclude latter classification from statute.].) In other words, the Legislature's decision to enumerate a particular class of person who would be responsible for any underpayment, instead of referring to a general classification, e.g., anyone benefitting from or involved in the underpayment, strongly suggests a limitation on the categories of persons who can be liable for any balance remaining on the note due to a mistake in the payoff demand statement. (See e.g., *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13 [241 Cal.Rptr. 67, 743 P.2d 1323] ["'. . . the expression of certain things in a statute necessarily involves exclusion of other things not expressed.'"].)

If we were to read the statute as allowing recovery against any person involved in the payoff transaction or from anyone theoretically benefitted from the underpayment of the loan, such an interpretation would render the word "obligor" in the statute mere surplusage. However, under general rules of statutory construction any interpretation which renders any words of a statute unnecessary should be avoided. (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 799 [268 Cal.Rptr. 753, 789 P.2d 934]; see also *People* ex rel. *Bledsoe* v. *Campbell* (1902) 138 Cal. 11, 15 [70 P.2d 918] [". . . courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions."].)

This construction of the statute is consistent with what generally occurs in such transactions as a practical reality. In the typical situation, it is the debtor or borrower who receives the loan proceeds, who is aware of the terms of the loan and who, if allowed to pay less than the known terms of the loan due to some error of the lender, is unduly enriched at the lender's expense. The Legislature's choice of the obligor as the person responsible for any shortfall therefore comports with principles of fairness and equity.[2]

Freedom nevertheless suggests the plain language of section 2943, subdivision (d)(3) supports its position. Freedom argues the statute authorizes this

---

[2]Our research reveals few state Legislatures have addressed this particular subject. The State of Virginia appears to have the only statute which is analogous to California's section

action against Golden as agent for the obligor because the Legislature provided any sums omitted from the payoff statement were recoverable from the obligor "pursuant to the terms of the note *and existing provisions of law.*" (§ 2943, subd. (d)(3), italics added.) Freedom interprets this last clause as expressly not excluding equitable remedies against third parties in addition to the remedies provided as against the obligor.

Freedom's position cannot be sustained under generally accepted principles of statutory interpretation. Moreover, a close inspection of these phrases indicates they were intended to limit, rather than expand, a beneficiary's remedies in the event of an underpayment.

The phrase, "terms of the note," presumably refers to such matters as the balance due, the rate and calculation of interest, attorney fees or other fees that may be recoverable, and possibly such additional subjects as choice of law or forum. This phrase appears to define the specific terms under which an obligor may be held responsible for the underpayment.

The phrase "and existing provisions of law" is also used as a modifier in this sentence which specifies the terms under which the obligor is liable for any balance due as a result of a beneficiary's error. If Freedom's interpretation was correct, that the phrase authorizes remedies in addition to those a beneficiary may have as against an obligor, one would expect the phrase to be the subject of a separate sentence or at a minimum to be identified as separate subject matter by use of a semicolon or other punctuation device. (See *Board of Port Commrs.* v. *Williams* (1937) 9 Cal.2d 381, 389 [70 P.2d

---

2943. We note the language in the Virginia statute appears to be consistent with our holding in this case. That statute specifies in the event of an error in the payoff statement, the obligor on the loan remains liable for any remaining balance in a payoff transaction. The Virginia statute provides:

"A. Where a lien on real estate is secured by a deed of trust or mortgage, the owner of such real estate, if entitled to prepay the obligation secured by such deed of trust or mortgage, shall be entitled to receive from the bank, savings institution or other corporate entity holding such obligation, a written statement setting forth the total amount to be paid as of a particular date in order to obtain a release of the deed of trust or mortgage. The holder of the obligation secured by said deed of trust or mortgage shall mail or deliver such written statement of the payoff amount to the property owner or his designee within ten business days of the receipt of a written request for such payoff information from the property owner or his designee if the request contains the loan number and the address or other description of the location of the subject premises. *Upon payment in full of the obligation, the holder shall promptly cause the cancelled loan documents to be forwarded to the owner or his designee. An inadvertent error made in the calculation of the payoff amount shall not release the party liable for payment of the obligation from the requirement to pay the full amount due under the contract of indebtedness, nor shall it release the holder of the contract of indebtedness from the requirement to return any overpayment to such party or his designee.*" (Va. Code § 6.1-330.82 (1993), italics added.)

918]; *Wholesale Tobacco Dealers Bureau, Inc.* v. *National Candy and Tobacco Co.* (1938) 11 Cal.2d 634, 659 [82 P.2d 3, 118 A.L.R. 486].)

Instead, the phrases "pursuant to the terms of the note and existing provisions of law" appear together, unseparated by any punctuation marks. As a result they must both be construed as qualifying the phrase "obligation of the obligor." (*Board of Port Commrs.* v. *Williams, supra,* 9 Cal.2d 381, 389.) These phrases are also stated in the conjunctive, which further suggests they were meant to operate together in specifying the method for recovering a balance due from an obligor.

In addition, the phrase "and existing provisions of law" is a general phrase which follows the more specific phrase providing any sums still due are "recoverable by the beneficiary as an unsecured obligation of the obligor. . . ." In such circumstances, the general words are construed to apply to the specific thing mentioned. (§ 3534; *Harris* v. *Capital Growth Investors XIV, supra,* 52 Cal.3d at p. 1160; *Oliva* v. *Swoap* (1976) 59 Cal.App.3d 130, 138 [130 Cal.Rptr. 411] ["established rule of statutory construction that 'relative or modifying phrases are to be applied to the words immediately preceding them . . .' . . . ."].)

Thus, general rules of statutory construction do not support Freedom's argument the phrase "and existing provisions of law" has independent meaning and authorizes additional remedies not mentioned in the statute.

An alternative explanation of the phrase, "and existing provisions of law," is offered by a noted treatise writer on California property law. This treatise suggests the phrase is instead a reference to the so-called antideficiency statutes (Code Civ. Proc., § 580b) and means any amounts excluded from the lender's payoff demand statement would not be collectible from the debtor in the event the debt was a "purchase money mortgage." (2 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust and Mortgages, § 9.58 (Supp. 1992, p. 23.) This appears to be a reasonable interpretation of the phrase and one we adopt.

In short, the plain language of section 2943, subdivision (d)(3) leads to only one conclusion. We hold the Legislature's use of the word "obligor" in that subdivision means a beneficiary may look only to the obligor for any due but unpaid sums in the payoff of a secured loan where the underpayment was the result of the beneficiary's error in preparing the payoff demand statement.

II. *Section 2943 Does Not Create a New Remedy or Expand on an Existing Remedy, but Represents a Restricted Version of Remedies Available Under the Common Law.*

■ Freedom argues because the statute provides a remedy against an obligor in the event of an erroneous payoff demand statement, the statute is remedial and should be liberally construed to include remedies against third parties. (*Hooper* v. *Deukmejian* (1981) 122 Cal.App.3d 987, 1003 [176 Cal.Rptr. 569].) Our research has discovered the statute does not so much create a new remedy, or expand upon an old one, as it represents a restricted version of existing common law regarding remedies for mistakes in retiring loans secured by a mortgage or deed of trust. (See *Hutchins* v. *Waters* (1975) 51 Cal.App.3d 69, 72-73 [123 Cal.Rptr. 819].)

Under the common law, errors in retiring loans secured by mortgages or deeds of trust were analyzed under the equitable theories of unjust enrichment, mistake or estoppel and the like. The relevant inquires in these cases were whether the creditor's mistake was one of fact, in which case recovery against the debtor was possible, or whether the mistake was one of law and amounted to breach of a legal duty for which recovery was limited. (2 Miller & Starr, Cal. Real Estate Law, *supra*, Deeds of Trust and Mortgages, § 9.91, p. 280 et seq. and cases cited; 55 Am.Jur.2d, Mortgages, §§ 453, 454, pp. 471-472.) In other cases, whether the borrower was acting in good faith in tendering a lesser sum than claimed due was the critical issue in determining whether a tender should be deemed valid. (2 Miller & Starr, Cal. Real Estate Law, *supra*, Deeds of Trust and Mortgages, § 9.90, p. 275 and cases cited; Annot.; Creditor's Failure to Disclose Correct Amount Due as Affecting Sufficiency of Debtor's Tender of Amount Which Debtor Believes to Be Due, But Which Is Less Than Amount Actually Due (1978) 82 A.L.R.3d 1178.) Also under the common law, in the event a beneficiary was entitled to recover despite a mistake in the payoff transaction, the mortgage or deed of trust could be reinstated and the debt remain secured. (2 Miller & Starr, Cal. Real Estate Law, *supra*, Deeds of Trust and Mortgages, § 9.91, p. 280 et seq.; Annot., Discharge of Mortgage and Taking Back of New Mortgage as Affecting Lien Intervening Between the Old and New Mortgage (1924) 33 A.L.R. 149; Annot., Reinstatement and Restoration of Mortgages Released or Discharged Without Authorization, as Against Subsequent Purchasers, Lienholders, Judgment Creditors, and the Like, Without Notice (1954) 35 A.L.R.2d 948.)

Unlike the common law, section 2943 dispenses with the need for inquiries regarding the nature of the beneficiary's mistake. That section provides a

beneficiary may recover from the obligor any amount which was not stated in the payoff demand statement *"for any reason."* (§ 2943, subd. (d)(3), italics added.) That section also appears to eliminate any need to analyze the good or bad faith of the person making a tender to retire a loan.[3] Section 2943 provides an entitled person may rely on the amount stated in a beneficiary's payoff demand statement as the amount required to pay off the loan, unless the beneficiary amends the statement as provided. (§ 2943, subd. (d)(1) and (3).)

Also unlike the common law, section 2943 provides, while a beneficiary may still be entitled to recover a deficiency in the payoff of a loan, the remaining debt is no longer secured according to the terms of the original note regardless of the circumstances. (§ 2943, subd. (d)(3).)

On the other hand, section 2943 incorporates the common law concepts of unjust enrichment, mistake and estoppel and provides a debtor may not receive a windfall and escape the obligation of satisfying a loan in full when a mortgage or deed of trust is retired in error. The Legislature provided in these circumstances the debtor remains personally liable for the deficiency. (§ 2943, subd. (d)(3).)

Thus, because section 2943 continues common law equitable remedies but restricts those common law remedies in several material respects, that provision can not be said to create a new remedy or expand on an old one. (*Hutchins* v. *Waters, supra,* 51 Cal.App.3d at p. 72.) The statute instead

---

[3]Comments in a digest of the bill prepared for the Senate Judiciary Committee indicate the Mortgage Institute of California, the sponsors of the amendment, stated the purpose of the bill was to " 'shift the responsibility for calculating the amount to satisfy the loan from the borrowers [trustor or mortgagor] to [the] creditor [mortgagee or beneficiary]. . . .' " (Rep. of Sen. Judiciary Com. on Sen. Bill No. 1079 as amended June 29, 1988 (Aug. 1, 1988).)

However, it is doubtful whether a person who tenders an amount to pay off the loan should be able to rely on the amount stated in a payoff demand statement if that person has actual knowledge the amount stated is erroneous or if the facts suggest any reasonable person would realize the amount was wrong. (See, e.g., *Alexander* v. *McKnight* (1992) 7 Cal.App.4th 973, 977 [9 Cal.Rptr.2d 453] [although section 1102.6 states a buyer may rely on a seller's disclosure statement in a transfer of real property, such reliance may not be warranted for those things within the observation or knowledge of the buyer].)

This case does not present the question whether reliance on the payoff demand statement need be reasonable because there is no allegation in the complaint Golden knew the second and lower demand was in error. At oral argument counsel for Freedom suggested leave should be granted to amend the complaint to assert Golden had actual knowledge the second demand was erroneous. However Freedom never requested leave to amend below. Instead it steadfastly asserted the allegations in the complaint properly stated causes of action against Golden. Because Freedom did not request leave to amend below and instead chose to stand on its pleadings, we cannot say the trial court abused its discretion in ruling the allegations as pled were insufficient as a matter of law.

represents a restricted version of the remedies that had historically been available at common law. Consequently, section 2943 may not be properly classified as remedial therefore subject to expansive interpretation.[4]

## DISPOSITION

The judgment is affirmed. Golden to recover its costs of appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

---

[4]Because Freedom has an adequate remedy at law the equitable remedy of reformation of the payoff demand statement is not required. (*Morrison* v. *Land* (1915) 169 Cal. 580, 586 [147 P. 259]; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 3, p. 681 and cases cited.)