[No. S032435. Oct. 31, 1996.]

EDWARD T. GHIRARDO et al., Plaintiffs, Cross-defendants, and
Respondents, v.
RONALD F. ANTONIOLI et al., Defendants, Cross-complainants, and
Appellants.

## COUNSEL

Richard A. Hirsch, Tanke & Willemsen and Tony J. Tanke for Defendants, Cross-complainants and Appellants.

David G. Kenyon, in pro. per., Bowles & Verna, Richard T. Bowles, K. P. Dean Harper and Thomas G. F. Del Beccaro for Plaintiffs, Cross-defendants and Respondents.

## OPINION

**MOSK, J.**—In this matter, the purchasers of real property subject to a purchase money deed of trust requested the seller to make a payoff demand for the amount required to fully satisfy all obligations on the underlying promissory note. The seller made a demand purporting to state the full amount owed; the purchasers paid the sum, and the deed of trust was reconveyed. The seller subsequently concluded that, through a mistake of fact, he had understated the obligation, and demanded payment of the remaining sum. The purchasers refused and this action ensued.

We granted review to resolve the question whether the antideficiency provisions of Code of Civil Procedure section 580b constitute an absolute bar to the seller's recovery of the sum he allegedly omitted from the payoff demand on the purchase money deed of trust. We conclude that they do not. Principles of unjust enrichment, more recently codified in Civil Code section 2943, permit a seller to seek recovery of sums omitted from a payoff statement as an unsecured obligation. The seller in this matter pleaded and

proved a cause of action based on a theory of unjust enrichment. Accordingly, we reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

I.

The factual background of the transactions giving rise to this action, much of which was summarized in our recent decision in *Ghirardo* v. *Antonioli* (1994) 8 Cal.4th 791 [35 Cal.Rptr.2d 418, 883 P.2d 960], is as follows.

"1. *The transactions*

". . . Ronald and Pamela Antonioli (hereafter collectively referred to as Antonioli) bought a 20-acre parcel of undeveloped real property in Novato, California in December 1981 from McPhail's, Inc. (McPhail), giving McPhail a purchase-money promissory note for $618,919 (the Antonioli note) secured by a first deed of trust on the property (the Antonioli deed of trust). The Antonioli note was due in December 1984.

"In July 1984, Antonioli sold the property to Philip Gay Associates (Gay), receiving a promissory note for $1,745,000 (the Gay note) secured by a second deed of trust (the Gay deed of trust). The Gay note was an all-inclusive note, i.e., 'wrap-around,' that included in its principal the unpaid balance still due McPhail under the Antonioli note. Gay made payments to Antonioli under the Gay note, and Antonioli continued to pay McPhail under the Antonioli note. The Gay deed of trust was subordinate and subject to the Antonioli deed of trust.

"Before escrow closed on his purchase of the property, Gay contracted to sell it to Edward Ghirardo and the other respondents (hereafter collectively referred to as Ghirardo). Ghirardo paid more than $650,000 in cash, executed a $200,000 promissory note (the Ghirardo note) and accompanying third deed of trust to Gay (the Ghirardo deed of trust), and took the property subject to the existing Gay note and deed of trust in its original sum of $1,745,000. No documents were executed between Antonioli and Ghirardo in connection with this sale. Ghirardo was not a party to either the Gay note and deed of trust or the Antonioli note and deed of trust.

"2. *The dispute and settlement*

"A dispute arose in 1986 between Antonioli and Ghirardo regarding payments allegedly owing to Antonioli on the Gay note. (After Ghirardo purchased the property from Gay, Ghirardo had begun paying directly to

Antonioli the payments owed by Gay. This eliminated the need for Ghirardo to pay Gay, who would in turn have to remit the payment to Antonioli.) Antonioli began nonjudicial foreclosure proceedings. Ghirardo sued to enjoin the foreclosure and obtained a temporary restraining order. After a court hearing on Ghirardo's request for a preliminary injunction and before decision, the parties reached a settlement agreement that resulted in a restructuring of the debt and dismissal of Ghirardo's action to enjoin the foreclosure.

"Under the settlement, Antonioli canceled the Gay note and reconveyed the Gay deed of trust. In exchange, Ghirardo agreed to pay $342,500 in cash and to execute two new secured notes payable to Antonioli in the amounts of $57,500 (the small note) and $1,072,867.47 (the large note). . . . Ghirardo also agreed 'as and for consideration of this new Note' to pay a $100,000 fee, which the agreement stated was to be 'added to the principal of the [large] note.' The small note bore interest at the stated rate of 13 percent. The large note stated a 10 percent interest rate, but with the $100,000 fee included in the principal, the effective rate of interest was 17.46 percent. When the notes were executed, the maximum permissible rate was 10.5 percent. Ghirardo also agreed to pay $45,000 in attorney fees to Antonioli." (*Ghirardo* v. *Antonioli, supra,* 8 Cal.4th at pp. 795-797, footnote omitted.)

Ghirardo paid the small note in full. In January 1988, before the large note was due, he proposed paying off the outstanding balance of his obligation and requested that Antonioli make a demand of the total amount outstanding into an escrow account established for that purpose. Antonioli complied, and, on January 28, 1988, Ghirardo paid into escrow the sum demanded, $1,167,205.56, consisting of the face value of the note, $1,072, 867.47, plus an amount of interest. After escrow closed and the deed of trust was reconveyed to Ghirardo, Antonioli contacted Ghirardo and informed him that he had understated the obligation, demanding the additional sum of $151,566.82, the purported difference between the obligation and the amount paid into escrow. He did not seek reconveyance or take any steps to place purchasers or creditors on notice of the claim. Ghirardo responded by asserting that the both the large and the small notes were usurious. He demanded that Antonioli repay all interest paid on the notes. Antonioli refused.

3. *The trial and appeal*

Ghirardo filed this action in July 1988, contending that the large and small notes were usurious. He sought damages including treble the amount of interest paid, prejudgment interest, and attorney fees. Antonioli cross-complained for the balance allegedly due on the large note. He sought relief on

a variety of legal and equitable theories, including a cause of action for "Recovery of Deficiency Balance," a common count "For Payment of Money," a cause of action to "Establish Resulting Trust for Accounting," and causes of action for fraud and deceit.[1] Ghirardo raised numerous affirmative defenses, including the equitable doctrines of unclean hands, waiver, failure to do equity, and laches.

After a bench trial, the superior court found that the large and small notes were usurious and awarded damages to Ghirardo. It also denied relief on the cross-complaint. It did so on two grounds. First, it concluded that the amount allegedly owed reflected interest rather than principal; because the notes were usurious, Antonioli was not entitled to recovery of the unpaid interest.[2] Second, it concluded that Antonioli was barred from recovery by the "one form of action" rule of Code of Civil Procedure section 726, because he accepted the payoff and reconveyed the deed of trust, rather than proceeding by way of judicial foreclosure and obtaining a deficiency judgment.

The Court of Appeal affirmed, holding that the large and small notes were usurious. It declined to reach the issue whether Antonioli could obtain a deficiency judgment.

A majority of the court reversed, holding that the large and small notes were neither a loan nor a forbearance within the meaning of usury law, but "were instead the functional equivalent of a modification to a credit sale that was exempt from the usury law." (*Ghirardo* v. *Antonioli, supra,* 8 Cal.4th at p. 808.) The matter was remanded to the Court of Appeal to consider, in light of resolution of the usury issue, whether Antonioli could obtain a deficiency judgment.

The Court of Appeal, on remand, determined that this issue was not governed by Code of Civil Procedure section 726; properly viewed, Antonioli was not, in fact, seeking a true deficiency judgment. Rather, "this appeal is governed by Civil Code section 2943[, subdivision (d)(3)], which provides that a sum inadvertently omitted from a payoff demand on a secured obligation 'shall continue to be recoverable by the beneficiary as an unsecured obligation of the obligor pursuant to the terms of the note and *existing provisions of law*.' " (Italics added.)

---

[1]At trial, Antonioli stipulated to dismissal of the causes of action for fraud and deceit.

[2]The superior court found that Ghirardo "paid the full amount [Antonioli] had demanded to satisfy the Large Note, a total of $1,167,205.56. That amount covered the full principal value of the Large Note, $1,072,867.47, plus some $94,338.09 in excess of the face value." With regard to Antonioli's allegation that he made an error in calculation, amounting to $151,566.82, in his payoff demand on the large note, the superior court found that Ghirardo did not owe that additional sum. Ghirardo had "paid all sums 'due' because [he] paid more than the principal amount of the Large Note, and no interest was due on that note because it was usurious."

Nevertheless, the Court of Appeal concluded that Antonioli could not recover the omitted sum: "Civil Code section 2943 does not help Antonioli. The phrase 'and existing provisions of law' in subdivision (d)(3) of section 2943 is a reference to the antideficiency statute (Code Civ. Proc., § 580b); it qualifies the phrase 'obligation of the obligor' (Civ. Code, § 2943, subd. (d)(3)) and 'means any amounts excluded from the lender's payoff demand statement would not be collectible from the debtor in the event the debt was a "purchase money mortgage." ' " Ghirardo's debt was a purchase money obligation: "[I]t was 'given to the vendor to secure payment of the balance of the purchase price' (Code Civ. Proc., § 580b) and was 'the functional equivalent of a modification to a credit sale' [citation]. Thus, the [sum] inadvertently excluded from Antonioli's payoff demand was not collectible once escrow closed."

The Court of Appeal affirmed the judgment as to denial of relief on the cross-complaint. We granted review.

## II.

As we shall explain, we conclude that Antonioli was not entitled to obtain a deficiency judgment against Ghirardo. Nor was he entitled to relief under Civil Code section 2943, because the statute was enacted only *after* the filing of this action and does not apply to the underlying transactions. He was, however, entitled to relief on a theory of unjust enrichment.

### a.

The Court of Appeal concluded that Antonioli could not obtain a deficiency judgment against Ghirardo. It was correct.

In the case of real property, deficiency judgments are governed by Code of Civil Procedure section 726, which provides that "[t]here can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter." (Code Civ. Proc., § 726, subd. (a); *Brown* v. *Jensen* (1953) 41 Cal.2d 193, 195 [259 P.2d 425] ["Under section 726 of the Code of Civil Procedure, there may be only one action for the recovery of a debt secured by a trust deed, which action is one of foreclosure."].)

Thus, in order to obtain a deficiency judgment, Antonioli was required first to proceed by judicial foreclosure (Code Civ. Proc., § 726, subd. (a)). Then, if the proceeds from the foreclosure were insufficient to

cover the amount of the promissory note, "unless . . . a deficiency judgment is prohibited by [Code of Civil Procedure] Section 580b," he could seek to collect the remaining debt personally by deficiency judgment (*id.*, subd. (b).). Even then, any deficiency judgment would be limited to the difference between the fair market value of the property and the amount for which it was sold. (*Ibid.*).

That did not occur. Instead, Antonioli made a payoff demand on the large note, Ghirardo paid the full amount demanded, and, after accepting payment, Antonioli voluntarily reconveyed the deed of trust securing the note. Only then did he seek a "deficiency judgment" to recover the amount purportedly omitted from the payoff demand.

Nor did Antonioli establish that he fell within an exception to the "one form of action" rule of Code of Civil Procedure section 726. ██ "Although an exception to the one-action rule has developed in cases where foreclosure would be an idle act because the security has been destroyed or has become worthless [citations], the exception does not apply if the beneficiary himself is responsible for the loss of security. . . . '[W]hen the mortgagee, by his own act or neglect, deprives himself of the right to foreclose the mortgage, he at the same time deprives himself of the right to an action upon the note.' [Citation.]" (*Pacific Valley Bank* v. *Schwenke* (1987) 189 Cal.App.3d 134, 140-141 [234 Cal.Rptr. 298].) ██ It was by Antonioli's own act of accepting the payoff and reconveying the deed of trust that he deprived himself of the right to an action on the large note for a deficiency judgment.

In the Court of Appeal, Antonioli urged that he should nonetheless be entitled to a deficiency judgment on two grounds: first, that Ghirardo failed to plead the "one form of action" rule of Code of Civil Procedure section 726 as an affirmative defense; and second, that Ghirardo waived the protections of the statute by accepting reconveyance of the deed of trust and failing to insist that Antonioli first proceed against the security.

The Court of Appeal properly rejected both arguments. First, Antonioli waived any pleading defect based on Ghirardo's failure to raise an affirmative defense under Code of Civil Procedure section 726. Ghirardo raised the "one form of action" defense in his post-trial brief and proposed statement of decision. Antonioli made no procedural objection based on failure to plead, but instead argued the merits of the "one form of action" issue as if it had been pleaded. Antonioli may not assert the pleading defect for the first time on appeal. (*Hilliard* v. *A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 392 [196 Cal.Rptr. 117] [" 'Where the parties try the case on the assumption that . . .

[an] issue . . . [is] raised by the pleadings, . . . neither party can change this theory for purposes of review on appeal.' "].)

Second, there was no waiver by Ghirardo of the "one form of action" rule at the time of the payoff and reconveyance: Ghirardo had no reason to insist on foreclosure; he simply paid the amount demanded by Antonioli as payable on the large note. Antonioli accepted the payoff and voluntarily reconveyed the deed of trust. There was no waiver by Ghirardo, because he did not intentionally relinquish a known right; nor did he demand reconveyance or acquiesce in a decision by Antonioli not to foreclose. (See, e.g., *Guild Wineries & Distilleries* v. *Land Dynamics* (1980) 103 Cal.App.3d 966, 977 [163 Cal.Rptr. 348] [" 'Waiver is the intentional relinquishment of a *known right.*' "]; *Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 1005 [275 Cal.Rptr. 201, 800 P.2d 557] [by acquiescing in creditor bank's decision not to foreclose and by demanding reconveyance, debtor caused the bank to forgo its security and waived the right to rely on Code of Civil Procedure section 726].)

Even apart from the application of Code of Civil Procedure section 726, however, Antonioli could not obtain a deficiency judgment against Ghirardo if the large note was a "purchase money" obligation. Code of Civil Procedure section 580b in relevant part provides: "No deficiency judgment shall lie in any event after a sale of real property . . . for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property . . . ." Thus, in the case of a seller-financed loan for real property, i.e., a purchase money obligation, a deficiency judgment is prohibited.

Although Antonioli never acknowledged in the superior court or the Court of Appeal that the large note was a purchase money obligation, this court effectively so held. (*Ghirardo* v. *Antonioli, supra,* 8 Cal.4th at p. 807.) It was determined that Ghirardo's debt was "the functional equivalent of a modification to an originally exempt [with regard to usury law] credit sale"—i.e., the seller-financed transaction between Antonioli and Gay. (*Ibid.*)[3] As explained, Ghirardo, in effect, stepped into Gay's shoes and was obligated under a modified version of the original *purchase-money note* between Antonioli and Gay. For that reason, it was concluded that the large and small notes were exempt from the usury law. (*Ghirardo* v. *Antonioli, supra,* 8

---

[3]In a credit sale, the property is sold on credit as an advance over the purchase price. "In these circumstances, the seller finances the purchase of property by extending payments over time and charging a higher price for carrying the financing." (*Southwest Concrete Products* v. *Gosh Construction Corp.* (1990) 51 Cal.3d 701, 705 [274 Cal.Rptr. 404, 798 P.2d 1247].)

Cal.4th at p. 808.) For the same reason the notes were subject to the antideficiency provisions of Code of Civil Procedure 580b.

### b.

██ The fact that Antonioli was not entitled to a deficiency judgment was not, however, dispositive of his ability to recover the sums omitted from the payoff statement. As the Court of Appeal concluded, Code of Civil Procedure section 726—like Code of Civil Procedure section 580b—applies to the recovery of an obligation secured by a deed of trust on real property. After the payoff and reconveyance, any remaining obligation was *no longer secured*. Nor, strictly speaking, did the sums omitted from the payoff demand constitute a "deficiency," i.e., the difference between the value of the large note and the value of the real property in a judicial foreclosure.

Instead, the Court of Appeal concluded that this matter is governed by Civil Code section 2943. It erred thereby. Although it would be in point if the transaction occurred today, the statute had not been enacted at the time of the payoff and reconveyance at issue here. Not surprisingly, therefore, Antonioli never sought relief under the statute and could not have done so.[4]

Antonioli was, however, entitled to seek relief under traditional equitable principles of unjust enrichment.

██ The Court of Appeal in *Freedom Financial Thrift & Loan* v. *Golden Pacific Bank* (1993) 20 Cal.App.4th 1305 [25 Cal.Rptr.2d 235] recently summarized the common law remedies available *before* the enactment of

---

[4]Although Antonioli did not address the point either in his petition for review or in his opening brief, he acknowledges in a footnote to his reply brief that Civil Code section 2943, subdivision (d)(3), became effective on January 1, 1989—a year *after* the payoff and reconveyance at issue in this matter, which took place in January 1988. We discern, and the parties suggest, no basis for applying the statute retroactively; indeed, it establishes procedures, and confers rights, that apparently did not exist at the time of the transaction. Thus, former Civil Code section 2943 required Antonioli only to prepare and deliver at the request of Ghirardo "a true, correct, and complete copy of the note and any subsequent modification thereto, and a written statement" showing, inter alia, "[t]he amount of the unpaid balance of the obligation secured by the mortgage or deed of trust and the interest rate, together with the total amounts, if any, of all overdue installments of either principal or interest or both." (Former Civ. Code, § 2943, subd. (b), as amended by Stats. 1982, ch. 1203, § 2, p. 4384.) The statute was substantially amended in 1988 to provide, inter alia, that a payoff demand statement "may be relied upon" by an "entitled person"—"including with respect to the payoff demand statement reliance for the purpose of establishing the amount necessary to pay the obligation in full." (Civ. Code, § 2943, subd. (d)(1), as amended by Stats. 1988, ch. 966, § 1, p. 3070.) The beneficiary may recover "any sums that were due and for any reason not included in the statement" as an "unsecured obligation." (Civ. Code, § 2943, subd. (d)(3), as amended by Stats. 1988, ch. 966, § 1, p. 3070.) At the time of the payoff and reconveyance in January 1988, of course, neither party could have invoked the statute in futuro.

Civil Code section 2943 in the event the payoff demand understated the actual balance due on an obligation. "Under the common law, errors in retiring loans secured by mortgages or deeds of trust were analyzed under the equitable theories of unjust enrichment, mistake or estoppel and the like. The relevant inquiries in these cases were whether the creditor's mistake was one of fact, in which case recovery against the debtor was possible, or whether the mistake was one of law and amounted to breach of a legal duty for which recovery was limited. [Citations.] In other cases, whether the borrower was acting in good faith in tendering a lesser sum than claimed due was the critical issue in determining whether a tender should be deemed valid. [Citations.] Also under the common law, in the event a beneficiary was entitled to recover despite a mistake in the payoff transaction, the mortgage or deed of trust could be reinstated and the debt remain secured." (*Freedom Financial Thrift & Loan* v. *Golden Pacific Bank, supra*, 20 Cal.App.4th at p. 1314.)

"[Civil Code] section 2943 incorporates the common law concepts of unjust enrichment, mistake and estoppel and provides a debtor may not receive a windfall and escape the obligation of satisfying a loan in full when a mortgage or deed of trust is retired in error. The Legislature provided [that] in these circumstances the debtor remains personally liable for the deficiency." (*Freedom Financial Thrift & Loan* v. *Golden Pacific Bank, supra*, 20 Cal.App.4th at p. 1315.)

■ Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another. (Rest., Restitution, § 1, p. 12.) A person is enriched if he receives a benefit at another's expense. (*Id.*, com. a, p. 12.) The term "benefit" "denotes any form of advantage." (*Id.*, com. b, p. 12.) Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss. Even when a person has received a benefit from another, he is required to make restitution "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." (*Id.*, com c, p. 13.)

Thus, a party who does not know about another's mistake, and has no reason to suspect it, may not be required to give up the benefit if he also relied on it to his detriment. For example, in *California Federal Bank* v. *Matreyek* (1992) 8 Cal.App.4th 125 [10 Cal.Rptr.2d 58], a bank advised borrowers that they could pay off a loan without incurring any prepayment penalty. The borrowers did so, and the bank, under the mistaken belief that no prepayment penalty was due, caused the note to be canceled and the deed of trust reconveyed without requesting a prepayment penalty. The bank

subsequently learned that it was required to pay a prepayment penalty to the Federal National Mortgage Association that funded the loan. The Court of Appeal concluded that the bank's mistake was not a basis for a cause of action for unjust enrichment against its borrowers because they did not know of the mistake and also detrimentally relied on the bank's promise. (*Id.* at pp. 132-134.)

In other circumstances, however, the party benefiting from a mistake of fact may be not be entitled to retain what amounts to a mere windfall. Thus, in *First Nationwide Savings* v. *Perry* (1992) 11 Cal.App.4th 1657 [15 Cal.Rptr.2d 173], the Court of Appeal considered whether a beneficiary could recover for unjust enrichment from a nonassuming grantee of a purchase money deed of trust after the trustee mistakenly reconveyed the deed of trust and the grantee sold the property, thereby obtaining all the proceeds from the sale. (*Id.* at p. 1160.) The Court of Appeal concluded that a cause of action for unjust enrichment could be stated if the beneficiary amended its complaint to allege that the grantee knew, or should have known, that the deed of trust was mistakenly reconveyed and that it was not entitled to all the proceeds of the sale. It reasoned that restitution may be required when the person benefiting from another's mistake knew about the mistake and the circumstances surrounding the unjust enrichment. (*Id.* at p. 1664.) "In other words, innocent recipients may be treated differently than those persons who acquire a benefit with knowledge." (*Ibid.*)

■■■ Ghirardo contends that, even if principles of unjust enrichment would ordinarily apply to a mistake of fact in a payoff demand, a different result is required in the case of a purchase money obligation, like the one at issue here. Specifically, he argues that the antideficiency provisions of Code of Civil Procedure section 580b operate as an absolute bar to recovery for mistakes in a payoff demand on a note secured by a deed of trust on real property. He is unpersuasive. Neither the wording nor the underlying purpose of Code of Civil Procedure section 580b dictates such a draconian result in the case of a mistake of fact in a payoff demand.

■■■ "Section 580b [of the Code of Civil Procedure] places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security. Precarious land promotion schemes are discouraged, for the security value of the land gives purchasers a clue as to its true market value. [Citation.] If inadequacy of the security results, not from overvaluing, but from a decline in the property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability. Section 580b thus serves as a stabilizing factor

in land sales." (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 42 [27 Cal.Rptr. 873, 378 P.2d 97].)

 None of these economic policy considerations applies to a mortgagee's recovery of sums omitted, through a mistake of fact, in a payoff demand statement. As the Court of Appeal explained in *First Nationwide Savings*, which also involved a purchase money deed of trust: "[A]llowing recovery for unjust enrichment would not contradict the policy of requiring the creditor to rely upon the property to secure the debt. This is because any unjust enrichment recovery could not exceed the property value. Thus, if the property value had decreased, and was less than the debt, a plaintiff's unjust enrichment recovery would be limited by the value of the property." (*First Nationwide Savings* v. *Perry*, *supra*, 11 Cal.App.4th at pp. 1664-1665.)[5]

Nor would this result permit a creditor to obtain a deficiency judgment through trickery, e.g., by releasing its security after accepting payment on an understated payoff demand and then suing for unjust enrichment. "A beneficiary would not gain anything in [such a] scenario. . . . [A]n unjust enrichment recovery is not the same as a deficiency judgment. Whether through foreclosure or an unjust enrichment cause of action, the beneficiary's recovery would be limited to the amount of the debt covered by the value of the property. Assume the debt was $50,000, and the property value decreased from $60,000 to $40,000. If the trustee mistakenly reconveyed the deed of trust, and the grantee sold the property and received $40,000, the beneficiary could recover only $40,000, albeit through an unjust enrichment cause of action or foreclosure. No deficiency would be allowed." (*First Nationwide Savings* v. *Perry*, *supra*, 11 Cal.App.4th at p. 1665.)

 Antonioli, of course, maintains that his alleged understatement in the payoff demand was not a matter of trickery but simply an error of arithmetic. Nonetheless, as he concedes, any recovery he obtains from Ghirardo based on a theory of unjust enrichment may not exceed the value of the real property at the time of the payoff and reconveyance.

---

[5]For the same reasons, it would appear that a remedy under Civil Code section 2943—which codifies principles of unjust enrichment as applied to errors in a payoff demand—would not be absolutely barred in the case of a purchase money obligation. We disapprove the dictum in *Freedom Financial Thrift & Loan* to the effect that, under Civil Code section 2943, "any amounts excluded from the lender's payoff demand statement would not be collectible from the debtor in the event the debt was a 'purchase money mortgage.' " (*Freedom Financial Thrift & Loan* v. *Golden Pacific Bank*, *supra*, 20 Cal.App.4th at p. 1313.)

## III.

Ghirardo does not argue that the total amount of his obligation exceeded the value of the real property. Instead, he contends that Antonioli is not entitled to relief because he did not plead a cause of action for unjust enrichment in his complaint. He is incorrect. The complaint set forth a common count "for payment of money" that rests on a theory of unjust enrichment. The claim was adequately pleaded and proved.

Antonioli presented evidence at trial concerning the calculating error that resulted in a mistake in the payoff demand. Thus, his attorney, Richard A. Hirsch, testified that the total amount actually due on the large note was $1,316,874.10. He stipulated that the payoff demand was for the sum of $1,167,205.56. Accordingly, the unpaid balance was $149,668.54.[6] Ghirardo did not dispute that a mistake of fact occurred in that amount. Although he maintained that he did not know of the mistake until he was informed by Antonioli, he did not establish that he reasonably relied to his detriment on the error. His principal defense at trial was that the omitted sum was usurious interest on the large note, and, as such, could not be recovered.

Although Ghirardo pleaded numerous affirmative equitable defenses, he did not prove them at trial. Thus, for example, he presented no evidence that—apart from charging an allegedly usurious rate of interest—Antonioli acted with "unclean hands." Nor did he even attempt to establish that, because the total payoff obligation exceeded the fair value of the property, the antideficiency provisions of Code of Civil Procedure section 580b were violated. Thus, although he had an opportunity to do so, Ghirardo did not carry his burden of proving that any viable affirmative defense barred Antonioli's recovery in unjust enrichment.

We conclude, based on the record, that Antonioli has established his entitlement to recover the sum of $149,668.54, which was omitted from the

---

[6]In his closing trial brief, Antonioli stated that the unpaid balance was $149,668.52. Based on the trial evidence, he was correct—apart from a minor ($0.02) discrepancy. He now contends that he is entitled to $151,566.82, the amount of the unpaid balance on the large note as alleged in the cross-complaint. He has already conceded at trial that the allegations in the cross-complaint concerning the amounts of the payoff demand and the unpaid balance were incorrect. Adding to the confusion, Antonioli also now erroneously contends that the payoff demand was in the amount of $1,072,867.47. The latter sum was not the payoff demand but, rather, the full *face value* of the note, which was substantially less than the payoff demand, which included interest. The superior court found that Ghirardo "paid the full amount [Antonioli] had demanded to satisfy the Large Note, a total of $1,167,205.56."

payoff demand. It also appears that, as the prevailing party on the cross-complaint, he may be entitled to attorney fees under the terms of the small and large notes.[7]

Accordingly, we reverse the judgment of the Court of Appeal and remand with directions to remand the matter to the superior court with directions to enter judgment for Antonioli in the amount of $149,668.54 and any applicable interest, and for attorney fees as deemed reasonable.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

---

[7]Both the small and large notes contained attorney fees clauses providing: "Should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees."