BAZAK INTERNATIONAL
CORP., Plaintiff,

v.

TARRANT APPAREL GROUP,
Defendant.

No. 04 Civ. 3653(VM).

United States District Court,
S.D. New York.

Dec. 2, 2004.

Matthew C. Gruskin, Shiboleth Yisraeli, Roberts & Zisman, LLP, New York City, for plaintiff.

John E. Linville, Manatt Phelps & Phillips, LLP, New York City, for defendant.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Bazak International Corp. ("Bazak"), a textile merchandising company that is organized and has its principal

place of business in New York, brought this action in New York State Supreme Court against defendant Tarrant Apparel Group ("Tarrant") a corporation also in the textile merchandising business, organized and with its principal place of business in California. Tarrant removed the case to this Court on the basis of diversity jurisdiction, and subsequently moved to dismiss the complaint for failure to state a claim upon which relief could be granted. Bazak then amended its complaint. In response, Tarrant requested expedited-discovery on the breach of contract claim, which the Court granted. Tarrant decided to proceed with its motion to dismiss only on the claim of unjust enrichment. For the reasons discussed below, the Tarrant's motion is granted.

## I.  FACTS AND PROCEEDINGS

On September 15, 2003, Tuvia Feldman ("Feldman"), the president of Bazak, met with Gerrard Guez ("Guez"), Tarrant's Chief Executive Officer, in Tarrant's New York office to discuss Bazak's proposed purchase of certain jeans from Tarrant. During this meeting, Guez indicated that Tarrant had 1,600,000 pairs of jeans available to sell to Bazak. The parties allegedly agreed that, subject to Bazak's receipt of a written inventory and visual inspection of the items in Tarrant's warehouses in Los Angeles, Tarrant would sell Bazak the jeans at a price of between $3.00 and $3.50 per item, provided that Bazak would buy the entire inventory and take possession of the items by the end of the year.

On September 18, 2003, an employee of Tarrant sent Feldman an inventory list that detailed the merchandise Tarrant apparently planned to sell to Bazak. Following receipt of the inventory, Feldman and Avi Jacobi ("Jacobi"), also of Bazak, flew to Los Angeles on September 29, 2003 to inspect the merchandise. Feldman and Jacobi were taken to Tarrant's office to meet with Guez, who indicated that they were to deal directly with Brian Buchan ("Buchan") on the transaction.

When Feldman and Jacobi inspected the merchandise at Tarrant's warehouse, they learned that approximately 700,000 of the pairs of jeans that Bazak had expected to purchase were not among the inventory and had been sold to a third party. This change in inventory altered the price Bazak was willing to pay per item. Consequently, Feldman and Jacobi spent two days spot checking the merchandise to determine whether an agreement could still be reached. During their inspection, Feldman and Jacobi discovered that the remaining inventory varied from the description given by Tarrant during its initial conversation with Bazak. Nonetheless, Feldman offered to buy the entire inventory, consisting of 912,714 items, at $2.40 per item. Guez allegedly accepted the offer and told Buchan to send samples of the inventory to Bazak, along with an invoice.

According to Bazak, Feldman sent Buchan a signed letter ("Bazak's Letter"), dated October 3, 2003, which purported to confirm the agreement between Guez and Feldman and detailed an inventory of 912,714 items at $2.40 per item. Tarrant contests the authenticity of Bazak's Letter, alleging that Tarrant never received it. Instead, Tarrant has produced an unsigned letter ("Tarrant's Letter"), also dated October 3, 2003, addressed to Buchan and sent via email by Gali Neufeld ("Neufeld") of Bazak on behalf of Feldman. Tarrant's Letter details a purchase of 687,896 items, but does not list a price. In any event, Bazak asserts that it never received a reply to either letter. However, on October 6, 2003, Bazak received eleven cartons of sample inventory from Tarrant, including accompanying documentation but not an invoice. Feldman, on behalf of

Bazak, requested an invoice from Tarrant, but Tarrant eventually informed Bazak that the remaining merchandise had been sold to another buyer at a higher price.

Bazak filed a complaint in New York State Supreme Court claiming that Tarrant and Bazak had a contract for the purchase of 912,712 specific inventory items at a price of $2.40 an item, which Tarrant breached when it sold the merchandise to a third party. Bazak further claimed that Tarrant was unjustly enriched by this sale because it "obtain[ed] profits from the sale of jeans [that] Bazak had been led to believe had been sold and would be delivered to it." (Compl., dated Apr. 2, 2004, at 4.) Following removal of the action to this Court and Tarrant's motion to dismiss for failure to state a claim, Bazak amended its complaint with respect to its claim for breach of contract, attaching Bazak's Letter as Exhibit 3, but did not amend the claim for unjust enrichment. (*See* Am. Compl., dated June 11, 2004, at 5.) Bazak concurrently responded to Tarrant's motion to dismiss. In a letter to the Court, Tarrant disputed the authenticity of Exhibit 3. (*See* Letter from John Linville to the Court, dated June 25, 2004.) Tarrant subsequently filed a reply, voluntarily withdrawing its motion to dismiss as to the breach of contract claim until the authenticity of Bazak's Letter could be determined. At this stage in the litigation, the parties continue to genuinely dispute the existence of a contract between them for the sale of the jeans.

In the reply, however, Tarrant alleged that Bazak's claim for unjust enrichment set forth in the amended complaint was the same as that in the original complaint, and reiterated its position that Bazak had failed to state a claim under its theory of unjust enrichment. The Court agrees that the claim for unjust enrichment is substantively the same in the original and amended complaints. Because each party has had an opportunity to brief the issue, the Court will consider the merits of Tarrant's motion to dismiss Bazak's unjust enrichment claim.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

In ruling on a motion to dismiss, the Court must accept as true all well-pleaded assertions of fact alleged in the complaint. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998). The Court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir.2003). In deciding a motion to dismiss, the Court determines the legal feasibility of the complaint, but does not weigh the sufficiency of the evidence or resolve the merits of any issues that may be presented. *See Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984); *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980).

### B. *UNJUST ENRICHMENT CLAIM*

■ To state a claim of unjust enrichment under New York law,[1] the plaintiff must allege "(1) that the defendant was

---

1. The Court assumes the applicability of New York law, as the parties have not raised any choice of law issues. Moreover, even if under New York conflict of laws rules California law applied, the applicable standard governing unjust enrichment claims would be substantially the same as that in New York. *See, e.g., Ghirardo v. Antonioli*, 14 Cal.4th 39, 57 Cal. Rptr.2d 687, 924 P.2d 996, 1003 (1996).

enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or [benefit] to the plaintiff." *Golden Pacific Bancorp v. Federal Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir.2001); *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir.1983). The essence of a claim for unjust enrichment is that one party has parted with money or a benefit that has been received by another at the expense of the first party. *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir.2000). "A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belongs to the plaintiff." 22A N.Y. Jur.2d. Contracts § 515; *see also McGrath v. Hilding*, 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 363 N.E.2d 328 (N.Y.1977); *Stone v. Solarbrite, Inc.*, 128 A.D.2d 696, 512 N.Y.S.2d 784, 784–85 (App. Div.2d Dep't 1987). A plaintiff may simultaneously allege breach of contract and unjust enrichment in its complaint. *See Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*, 187 A.D.2d 225, 594 N.Y.S.2d 144, 145–46 (App. Div. 1st Dep't 1993) ("[W]here there is a bona fide dispute as to the existence of a contract . . . plaintiff may proceed upon a theory of quantum meruit and will not be required to. elect his or her remedies."); *see also Net2Globe Int'l, Inc. v. Time Warner Telecom of New York*, 273 F.Supp.2d 436, 466 (S.D.N.Y.2003). However, "the existence of a valid and enforceable written contract . . . ordinarily precludes recovery in quasi contract [such as unjust enrichment] for events arising out of the same subject matter." *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir.1998) (internal quotation marks and citations omitted).

Bazak alleges that Tarrant was enriched when it "sold goods to which [Bazak] was entitled," that Tarrant's benefit was gained at Bazak's expense because Bazak believed that it owned the goods and expected to profit from their resale. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint, dated June 11, 2004 ("Pl.Mem.") at 7, 9.) Bazak argues that equity and good conscience require Tarrant to return to Bazak any resale profit Tarrant earned from the sale of those goods. (*Id.*) Bazak does not assert that any merchandise or other value actually belonging to it independent of the alleged contract passed to and was received by Tarrant.

Bazak finds itself in a "catch 22" with this claim. If a valid, enforceable contract existed between the parties, then Bazak cannot recover under a theory of unjust enrichment. *See MacDraw*, 157 F.3d at 964. However, if no valid contract was in place regarding the sale of the goods, Bazak has failed to state a claim for relief under the theory of unjust enrichment because; absent a contract, the benefit that Tarrant garnered from selling the merchandise was not at Bazak's expense. Without a valid, enforceable contract, Bazak had no interest at all in the merchandise in question, and therefore the profits resulting from the sale of the merchandise by Tarrant were not a thing of value that belonged to Bazak. *See* 22A N.Y. Jur.2d Contracts § 515.

Bazak argues that some courts have allowed plaintiffs to recover profits pursuant to claims of unjust enrichment. For this proposition, Bazak relies on *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, Nos. 96 CIV. 9721, 98 CIV. 0123, 2002 WL 2012618 (S.D.N.Y. Sept.3, 2002); *Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1 (2d Cir.1989); *Amtorg Trading Corp. v. Miehle Printing Press & Mfg. Co.*, 206 F.2d 103 (2d Cir. 1953); and *Ultramar Energy Ltd. v. Chase*

*Manhattan Bank,* 179 A.D.2d 592, 579 N.Y.S.2d 353 (App. Div. 1st Dep't 1992). However, each of these cases is distinguishable from the case at bar.

In both *Versace* and *Manhattan Industries,* the court allowed the plaintiff to recover the defendant's profits as compensatory *sanctions* against the defendant because the defendant had violated the terms of an injunction issued for the plaintiff's benefit. *See Manhattan Industries,* 885 F.2d at 5–7 (imposing contempt sanctions for the defendant's violation of an injunction by awarding the defendant's profits to the contempt plaintiff under a theory of unjust enrichment); *Versace,* 2002 WL 2012618, at *11 ("The Court awards plaintiffs a compensatory fine equal to any profits made by Alfredo Versace via activities in violation of the preliminary injunction." (citing *Manhattan Industries,* 885 F.2d at 6)). Here, Bazak does not allege that Tarrant violated any injunction.

*Amtorg* is similarly unhelpful to Bazak's claim. In *Amtorg,* a contract for the sale of twenty printing presses to the plaintiff was frustrated by intervening federal regulations that prohibited the transaction. *See* 206 F.2d at 104–05. The plaintiff had given the defendant a down payment on the presses, and after the intervening federal regulations frustrated the contract, the defendant resold the presses to a third party for a price higher than the contract price with the plaintiff. The plaintiff sued to recover the down payment and the defendant's profit on resale under a theory of unjust enrichment. While the court allowed recovery of the down payment, the court specifically did *not* allow the plaintiff to recover the profits that the defendant garnered on resale to a third party. *See id.* at 108 ("Plaintiff is therefore entitled to restitution of its payments beyond and above any injury suffered by defendant. This would *not include the additional*

*profit on resale* obtained by defendant; no reason is apparent why defendant should not have the advantage it has been able to reap by this fortunate and frugal act." (emphasis added)). Accordingly, Bazak's reliance on this case in support of its theory that it should be awarded Tarrant's profits from resale of the merchandise to a third party is misplaced.

Bazak's reference to *Ultramar* is similarly unavailing. *Ultramar* pertained to a circular sale sequence, in which the plaintiff had contracted to buy oil from a company that turned out to be in poor financial condition. *See* 579 N.Y.S.2d at 354. The defendant, a bank, knew of the debtor's poor financial condition and yet enforced security agreements against the debtor, retaining proceeds that the plaintiff alleged rightfully belonged to it. Because the parties were all contractually connected to one another in a circular sale sequence, the facts of that case are distinguishable from the present situation, where the third party to whom Tarrant sold the merchandise in question was in no way connected to Bazak, contractually or otherwise. Furthermore, and contrary to Bazak's suggestion in its brief, *see* Pl. Mem. at 10, the court in *Ultramar* did not grant the plaintiff a benefit conferred by a disinterested third party upon the defendant. In fact, the court did not make any award, but held that "[s]ince the plaintiff maintains that Chase retained proceeds to which it was not entitled, a triable issue of fact exists as to whether it was unjustly enriched." *Id.*

## C. CONCLUSION

For the reasons set forth above, Bazak has failed to state a claim for unjust enrichment in its amended complaint. Absent a valid and enforceable contract, Bazak cannot show that any benefit that may have been conferred upon Tarrant by the

sale of the merchandise in question was at Bazak's expense. If a valid and enforceable contract between the parties exists, the claim for unjust enrichment cannot be maintained. Therefore, Tarrant's motion to dismiss this claim is granted.

### III. *ORDER*

For the reasons stated above, it is hereby

ORDERED that the motion of defendant Tarrant Apparel Group to dismiss the claim of plaintiff Bazak International Corp. for unjust enrichment is GRANTED.

SO ORDERED.