[No. A130718. First Dist., Div. Three. Apr. 30, 2012.]

REX ELDER, Plaintiff and Appellant, v.
PACIFIC BELL TELEPHONE COMPANY et al., Defendants and
Respondents.

844

---

**COUNSEL**

John C. Ochoa; Parisi & Havens, David C. Parisi, Suzanne Havens Beckman and Azita Moradmand for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Donald J. Querio and Philip Barilovits for Defendant and Respondent ACI Billing Services, Inc.

Pillsbury Winthrop Shaw Pittman, Douglas R. Tribble, Connie J. Wolfe and Roxane A. Polidora for Defendant and Respondent Pacific Bell Telephone Company.

OPINION

JENKINS, J.—Plaintiff Rex Elder, individually and on behalf of a class of similarly situated individuals, filed this lawsuit seeking relief against defendants Pacific Bell Telephone Company (hereafter Pacific Bell) and ACI Billing Services, Inc., doing business as OAN (hereafter OAN)[1] for the inclusion of allegedly unauthorized charges on a subscriber's telephone bill, a practice known as "cramming," in violation of Public Utilities Code section 2890, subdivision (a). We agree with plaintiff that the superior court erred in sustaining defendants' demurrers without leave to amend. Accordingly, the judgment of dismissal is reversed and the matter is remanded for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Law Relating to Cramming*

In 1998, the Legislature added sections 2889.9 and 2890 to the Public Utilities Code[2] to address "cramming," which is the practice of including unauthorized charges on a subscriber's telephone bill. (See Stats. 1998, ch. 1036, § 2, p. 7795; Stats. 1998, ch. 1041, § 3, p. 7971, amended by Stats. 1999, ch. 1005, § 65.7, p. 7711, and by Stats. 2000, ch. 931, § 4, p. 6959.) In pertinent part, section 2889.9 reads: "(a) No person or corporation shall misrepresent its association or affiliation with a telephone carrier when soliciting, inducing, or otherwise implementing the subscriber's agreement to purchase the products or services of the person or corporation, and have the charge for the product or service appear on the subscriber's telephone bill." In pertinent part, section 2890 reads: "(a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized." The statutes also contain provisions addressing billing and dispute procedures regarding cramming. (§§ 2889.9, 2890.) By these statutory enactments, the Legislature intended "to do all of the following: [¶] (a) Reduce the inclusion of unauthorized charges on a telephone subscriber's bill, a practice known as 'cramming.' [¶] (b) Clarify the rights and remedies available to California consumers with regard to telephone billing disputes. [¶] (c) Provide California consumers with a consistent, effective, and easily accessible means of resolving disputes over unauthorized, inadvertent, misleading, or fraudulent charges that appear on their telephone bills. [¶] (d)

---

[1] Plaintiff also named as a defendant AT&T, which entity was dismissed without prejudice and is not a party to this appeal. Defendant ACI Billing Services, Inc., doing business as OAN, was erroneously sued as "OAN Services, Inc."

[2] All further unspecified statutory references are to the Public Utilities Code.

Encourage the verification of telephone charges." (Stats. 1998, ch. 1041, § 1, p. 7969.)

### B.   Current Lawsuit[3]

In October 2009, plaintiff, on behalf of himself and others similarly situated, sued defendants Pacific Bell and OAN seeking relief for cramming.[4] By the first amended complaint, plaintiff sought relief for a class defined as: "[A]ll landline telephone subscribers in the state of California who suffered losses or damages as a result of . . . Pacific Bell billing for OAN products or services not authorized by the subscriber; provided, however, that the following are excluded from this Class: (i) the Defendants, and (ii) any employee of Defendants." The pleading set forth causes of action for breach of contract (against Pacific Bell only), tortious interference with a contract and restitution/unjust enrichment (against OAN only), unfair business practices in violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (hereafter UCL)[5] (against both defendants), and unauthorized telephone charges in violation of section 2890 (against both defendants).[6] In the prayer for relief, plaintiff sought certification of a class and appointment of

---

[3] Because plaintiff's lawsuit was resolved by demurrer, we set forth the relevant facts as alleged in the first amended complaint, the operative pleading. (*Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1156 [97 Cal.Rptr.2d 722].)

[4] As to the "facts relating to the named plaintiff," it was alleged that plaintiff was a subscriber of landline telephone service for his personal use from Pacific Bell. In or about 2009, his telephone bill included charges for certain premium content services, which he had not ordered and did not want to receive. He had not authorized defendants or anyone else to bill him for these charges and at no time did defendants verify his purported authorization of these charges. It was further alleged that "defendants had yet to provide a full refund of the unauthorized charges, consisting of the premium content charges, taxes, data charges, back interest, lost time, [or to] implement adequate procedures to ensure that such unauthorized charges would not appear in future billing periods and/or an assurance that such unauthorized charges would not appear in future billing periods."

[5] Because the Legislature has not given Business and Professions Code section 17200 et seq. an official name, our Supreme Court refers to these sections as the " 'unfair competition law.' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 169, fn. 2 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech Communications*).) In this opinion, we refer to these statutory sections in the same way.

[6] In their demurrers, defendants do not dispute that they are entities subject to sections 2889.9 and 2890. (See § 216, subds. (a), (b), (c) [defining "public utility" to include every "telephone corporation . . . where the service is performed for . . . the public . . . [;] . . . [¶] . . . [w]henever any . . . telephone corporation . . . performs a service for . . . the public or any portion thereof for which any compensation or payment whatsoever is received, that . . . telephone corporation . . . is a public utility subject to the jurisdiction, control and regulation of the commission . . ."; and "[w]hen any person or corporation performs any service for . . . any person, . . . that in turn either directly or indirectly, mediately or immediately, performs that service for . . . the public or any portion thereof, that person or corporation is a public utility subject to the jurisdiction, control, and regulation of the commission . . . ."].)

counsel, declaratory and injunctive relief, actual damages, including prejudgment interest, exemplary damages, costs, and attorney fees.

Defendants generally demurred to the entire complaint based on the ground that the Public Utilities Commission (hereafter PUC) had exclusive or primary jurisdiction to resolve the lawsuit (Code Civ. Proc., § 430.10, subd. (a)), and generally demurred to each count based on the failure to allege facts sufficient to state a cause of action (Code Civ. Proc., § 430.10, subd. (e)). OAN specifically demurred on the ground that each cause of action against it was uncertain. (Code Civ. Proc., § 430.10, subd. (f).) Plaintiff opposed the demurrers.

The superior court granted defendants' general demurrers without leave to amend on the ground that the PUC had exclusive jurisdiction over this lawsuit. Because of its ruling that it lacked jurisdiction, the court did not address defendants' alternate argument that this lawsuit should be stayed under the doctrine of primary jurisdiction and the PUC should be given the opportunity to rule on plaintiff's claims in the first instance. The court also found that a cause of action for tortious interference with a contract against OAN failed because the complaint did not allege facts to support a necessary inference that OAN knew the third party charges were unauthorized but nonetheless it forwarded them to Pacific Bell for inclusion in a subscriber's telephone bill. Having sustained the demurrers without leave to amend, the court issued a judgment dismissing the lawsuit in its entirety. Plaintiff timely appeals.

## DISCUSSION

### I. *Standard of Review*

In reviewing the ruling on defendants' demurrers, "we do not review the validity of [the superior court's] reasoning but only the propriety of the ruling itself. [Citations.]" (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 958 [93 Cal.Rptr.2d 413].)[7] "We independently evaluate the complaint, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context. [Citation.] Treating as true all

---

[7] Consequently, we do not separately address the superior court's reasons for sustaining the demurrers without leave to amend. (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1470 [49 Cal.Rptr.3d 227] (*McKell*) [to the extent the superior court's ruling may have been in error, "[w]e need not make the determination as to whether there was error," because our review is de novo and we "make our own determination as to whether plaintiff[] [has] pleaded facts sufficient to constitute a cause of action, under any theory"].)

material facts properly pleaded, we determine de novo whether the factual allegations of the complaint are adequate to state a cause of action under any legal theory, regardless of the title under which the factual basis for relief is stated. [Citation.]" (*Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th 479, 486 [93 Cal.Rptr.3d 130].) "Each element must be pleaded with particularity so as to apprise the defendant of the specific grounds for the charge and enable the court to determine whether there is any basis for the cause of action, although less specificity is required if the defendant would likely have greater knowledge of the facts than the plaintiff. [Citation.]" (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 211 [129 Cal.Rptr.3d 433].)

## II. *Application of Exclusive Jurisdiction Doctrine Is Not Warranted in This Case*

■ Section 1759, subdivision (a) (hereafter section 1759(a)), provides that no court, except the Supreme Court or a Court of Appeal, has jurisdiction to interfere with the PUC's performance of its official duties.[8] However, section 2106 allows an action to be filed in the superior court for damages caused by an allegedly unlawful act of a public utility.[9] As the court explained in *Cundiff v. GTE California, Inc.* (2002) 101 Cal.App.4th 1395 [125 Cal.Rptr.2d 445]: "Section 2106 and section 1759 address different things. Section 1759 defines and limits the power of [the] courts to pass judgment on, or interfere with, what the commission does. Section 2106, on the other hand, confirms the full power of the courts to pass judgment on what utilities do. Section 2106 'explicitly authorizes California courts to hear claims against public utilities for damages.' [Citation.] The similarity between the two statutes is that they both dictate which courts have jurisdiction to engage in these activities. Only appellate courts can review decisions . . . of the commission and interfere with its actions, whereas suits for relief against utilities can be brought in the trial court." (*Id.* at p. 1405.)

---

[8] Section 1759(a) reads: "No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of [the] court."

[9] Section 2106 reads, in pertinent part: "Any public utility which does, causes to be done, or permits any act, matter or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. . . . An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person."

■ Our Supreme Court has harmonized sections 1759 and 2106 by using a three-part test to determine whether a superior court has subject matter jurisdiction to hear a private action against a public utility, or whether such an action would be barred by section 1759(a): (1) whether the PUC had authority to regulate the conduct at issue; (2) whether it exercised that authority; and (3) whether the superior court action would hinder, frustrate, interfere with, or obstruct that authority. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 917–918 [55 Cal.Rptr.2d 724, 920 P.2d 669].) As applied to this case specifically, we consider (1) whether the PUC had the authority to adopt "a regulatory policy" on cramming conduct and "what steps the utilities should take, if any, to minimize" cramming; (2) "whether the PUC had exercised that authority"; and (3) "whether the superior court action would hinder or interfere with the PUC's exercise of regulatory authority with respect to" cramming. (*Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, 266 [115 Cal.Rptr.2d 874, 38 P.3d 1098] (*Hartwell*).)

■ Here, there is no question that the PUC has both the constitutional and statutory authority to make rules regarding cramming. (Cal. Const., art. XII, §§ 1–6; see Pub. Util. Com., §§ 2889.9, subds. (c), (d), (e), (f), (i), 2890.1.) And, there is no question that the PUC has adopted rules governing cramming pursuant to sections 2889.9 and 2890.1. ■ At issue here is the third factor—whether plaintiff's superior court action against defendants for allegedly engaging in cramming would hinder, frustrate, interfere with, or obstruct the PUC's performance of its official duties. For the reasons we now discuss, we conclude that plaintiff's lawsuit would not hinder, frustrate, interfere with, or obstruct the PUC's regulatory authority or rule-making on cramming as enunciated in its decisions.[10]

Contrary to defendants' contention, the PUC has not undertaken to oversee and regulate "all aspects of third-party billing" to prevent cramming by entities governed by the PUC. In its 2004 decision, the PUC explicitly stated its adoption of cramming rules, "which are based upon the Commission's

---

[10] The superior court granted Pacific Bell's request for judicial notice of certain PUC decisions. At the request of plaintiff, we take judicial notice of the PUC decisions, including its final decision in 2010. (See *Hartwell, supra*, 27 Cal.4th at p. 263, fn. 4.) Given the specificity of the PUC's decisions as set forth in the text of this opinion, we see no reason to solicit the views of the PUC regarding whether this lawsuit is likely to interfere with the performance of its duties. (Cf. *People ex rel. Orloff v. Pacific Bell* (2003) 31 Cal.4th 1132, 1155, fn. 12 [7 Cal.Rptr.3d 315, 80 P.3d 201] ["a court, faced with the question whether the civil action [by a private party] is barred by section 1759(a), may deem it appropriate to solicit the views of the PUC regarding whether the action is likely to interfere with the PUC's performance of its duties"].)

authority under the Constitution and the Public Utilities Code (particularly Sections . . . 2889.9–2894.10), *are not, in fact, intended to insulate public utilities from liability under other statutory schemes such as the Unfair Competition Law.* The Public Utilities Code provides that public utilities subject to the Commission's jurisdiction remain subject to other statutory schemes as well, whether those laws are enforced by the Commission or by the courts." (Cal.P.U.C. Interim Decision Issuing General Order No. 168, Rules Governing Telecommunications Consumer Protection (May 27, 2004) Dec. No. 04-05-057 [2004 Cal.P.U.C. Lexis 240 at p. *185], italics added.) "Thus, [the PUC agreed] with those parties who state[d] that the Commission and the courts have concurrent jurisdiction over consumer protection matters, in the sense that public utilities are subject to standards and requirements enforced by the Commission *and* to consumer protection laws enforced by the courts. A business practice that violates the Public Utilities Code and our consumer protection rules—. . . for example . . . cramming . . .—will likely also constitute an unfair and unlawful business practice under the Unfair Competition Law, and subject the offending utility to possible court-imposed sanctions under that law." (*Id.*, 2004 Cal.P.U.C. Lexis 240 at p. *188, fn. omitted, original italics.) The PUC further concluded: "In this rulemaking proceeding we reaffirm the principle that tariffs, and any limitation of liability provisions included in tariffs, are not designed to immunize carriers from liability for willful or fraudulent misconduct and violations of the law." (*Id.*, 2004 Cal.P.U.C. Lexis 240 at pp.*189–*190.)

Two years later, in its 2006 revised decision, the PUC specifically refrained from adopting any preventive measures to be taken by telephone companies or billing agents, such as OAN, to prevent cramming. (Cal.P.U.C. Decision General Order No. 168, *Market Rules To Empower Telecommunications Consumers and to Prevent Fraud* (Mar. 2, 2006) Dec. No. 06-03-013 [2006 Cal.P.U.C. Lexis 86 at pp. *152–*154].) The PUC believed it made "little sense to micromanage" the entities regarding security measures, "given that there are a number of security measures a carrier could adopt in order to minimize the risk of cramming." (*Id.*, 2006 Cal.P.U.C. Lexis 86 at p. *152.) Instead, the PUC determined it did not need to impose security measures to prevent cramming because telephone companies and billing agents, such as OAN, had "strong financial incentives to adopt [their own] significant security measures [to prevent cramming]," and consumers would "continue to benefit from significant statutory protections" in sections 2889.9 and 2890, which "forbid placement of unauthorized charges on a telephone bill." (Cal.P.U.C. Dec. No. 06-03-013, *supra*, 2006 Cal.P.U.C. Lexis 86 at pp. *153–*154.) In promulgating rules governing cramming complaints at that time, the PUC explained that its intent was to "establish, first and

foremost, that '[t]elephone companies may bill subscribers only for authorized charges.' [Public Utilities] Code § 2890[, subdivision] (a) does not put any qualifications on its statement that a telephone bill may only contain subscriber-authorized charges. Thus a carrier's responsibility to avoid placing unauthorized charges on its customers' phone bills extends to situations where a charge may originate with a billing agent or third party vendor. This responsibility is the same regardless of whether the charge at issue is communications-related or non-communications-related." (*Id.*, 2006 Cal.P.U.C. Lexis 86 at pp. *160–*161, fn. omitted.) "The[] carrier-focused rules in no way alter the statutorily-dictated responsibilities of persons or entities that originate charges placed on phone bills. . . . Third party vendors and billing agents are part of the billing chain and therefore share responsibility for ensuring that only authorized charges are placed on consumers' phone bills. This responsibility extends to both communications-related and non-communications-related charges." "In sum, . . . [t]hese rules benefit consumers by clarifying *that phone companies are ultimately responsible for any unauthorized charges placed on their customers' phone bills. Placing this responsibility on carriers ensures that they will actively monitor the entities for whom they provide billing and collection services, and will adopt appropriate safeguards to prevent their bills from being used to facilitate illegal cramming.*" (*Id.*, 2006 Cal.P.U.C. Lexis 86 at pp. *165–*167, italics added.) Thus, we reject Pacific Bell's contention made at oral argument that by the 2006 decision, the PUC determined that telephone companies were not to be held liable for unauthorized charges included on a subscriber's telephone bills until after the bills were sent, the subscriber had complained about the bill, and the telephone company failed to resolve the complaint to the subscriber's satisfaction.

On December 14, 2006, the PUC modified Decision 06-03-013, to "clarify . . . the applicability of the [General Order No.] 168 rules," by noting that its "intent in limiting the applicability of the rules was not to foreclose the ability of private individuals from filing claims under section 2106 or limit any existing rights. Rather, it was to indicate that we believe that all alleged violations of the G.O. 168 rules should be brought to the Commission for resolution as, we have primary jurisdiction over these matters. [Citation.] . . . [W]e shall be implementing a variety of consumer education programs and developing several initiatives to enhance enforcement of existing statutes and regulations as part of our consumer protection initiative. It is important that the interpretation and application of the rules are consistent with these programs and initiatives. Therefore, the Commission, and not the courts, should interpret the application of the G.O. 168 rules." (Cal.P.U.C. *Order Modifying Decision No. 06-03-013 and Denying Rehearing of the Decision as Modified* (Dec. 14, 2006) Dec. No. 06-12-042

[2006 Cal.P.U.C. Lexis 505at p. *24].) Because plaintiff does not seek to enforce the PUC's cramming rules, we see no merit to Pacific Bell's argument that the PUC should resolve this lawsuit because of its "expertise in the telecommunications industry," and it knows "how resolution of an individual matter may affect [its] continuing policies and programs."

In its *"Final Decision Adopting California Telephone Corporation Billing Rules,"* dated October 28, 2010, the PUC adopted "modifications" to General Order No. 168 "to ensure that Part 4 of GO 168 clearly specifies the rules required to ensure that only authorized charges are placed on a subscriber's bill," and "as reflected in the rules attached to today's decision to clarify that, as unambiguously required by the Public Utilities Code, the subscriber must authorize all charges that appear on a California telephone bill." (Cal.P.U.C. Decision Issuing General Order No. 168, *Final Decision Adopting California Telephone Corporation Billing Rules* (Oct. 28, 2010) Dec. No. 10-10-034 [2010 Cal.P.U.C. Lexis 424 at pp. *41, *44], rehearing denied by Decision No. 11-03-031, dated Mar. 10, 2011 [2011 Cal.P.U.C. Lexis 164].) In the decision's Attachment A, "Revised General Order [No.] 168, Part 4, *California Telephone Corporation Billing Rules,"* the PUC rewrote the rules "to address and report cramming-related issues." (Cal.P.U.C. Dec. No. 10-10-034, *supra*, Attachment A, 2010 Cal.P.U.C. Lexis 424 at pp. *78–*79.) However, the PUC repeated that: "Compliance with these rules does not relieve Billing Telephone Corporations of other obligations they may have under their tariffs, other Commission General Orders and decisions, FCC orders, and state and federal statutes," and these rules "shall not be interpreted . . . to abridge or alter a right of action under any other state or federal law." (*Id.* at p. *79.) In pertinent part, the rules now read that: (1) "Billing Telephone Corporations shall only place charges that have been authorized by the Subscriber on the Subscriber's telephone bill. All charges billed without Subscriber authorization are unlawful";[11] (2) "Billing Telephone Corporations shall bill Subscribers only for authorized charges. Billing Telephone Corporations shall adopt protocols which prohibit Billing Agents and Service Providers from submitting, directly or indirectly, charges for billing through a Billing Telephone Company that the Subscriber has not authorized. Billing Telephone Corporations must

---

[11] Pacific Bell argues that the obligation to obtain customer authorization for appropriate charges remains on the provider of the service or product because the rules make clear that as a billing telephone corporation, it can defend itself against alleged unauthorized charges by "providing a record of affirmative authorization from the Service Provider." (Cal.P.U.C. Dec. No. 10-10-034, *supra*, Attachment A, 2010 Cal.P.U.C. Lexis 424 at p. *81.) However, Pacific Bell ignores that the rules also provide that a subscriber may rebut any evidence of authorization by evidence that the subscriber did not authorize the charges, and that the billing telephone corporation bears the ultimate responsibility for all items presented in a subscriber's bill. (*Id.*, 2010 Cal.P.U.C. Lexis 424 at pp. *81–*82.)

monitor or cause to be monitored, either directly or through a Billing Agent, or other entity, each Service Provider's continuing compliance with this requirement"; (3) Billing telephone corporations are directed to take certain enumerated measures in the rules to ensure only authorized charges are included in a bill,[12] but "[t]he Billing Telephone Corporation bears ultimate responsibility for all items presented in a Subscriber's bill . . ."; (4) "Each Billing Telephone Corporation is responsible for monitoring the billings it controls for the purpose of preventing and detecting unauthorized charges, and for the prompt termination of billing services to Billing Agents and Service Providers that present unauthorized charges. Each Billing Telephone Corporation shall have in place and comply with a protocol for identifying unauthorized charges and suspending or terminating billing services to any Billing Agent or Service Provider that has submitted unauthorized charges"; and (5) "Nothing herein shall prevent a Subscriber from exercising his or her other rights." (Cal.P.U.C. Dec. No. 10-10-034, *supra*, Attachment A, 2010 Cal.P.U.C. Lexis 424 at pp. *81–*87.)

■ By its General Order No. 168 and decisions, the PUC has not effectively occupied the field such that all superior court actions raising cramming issues are subject to PUC's exclusive jurisdiction, as defendants suggest. More specifically, and as pertinent to our discussion, the PUC has not approved "a *general policy* of limiting the liability" of telephone companies and billing agents for cramming. (*Waters v. Pacific Tel. Co.* (1974) 12 Cal.3d 1, 10 [114 Cal.Rptr. 753, 523 P.2d 1161], italics added (*Waters*).) Nor has the PUC stated that compliance with its rules provides "a safe harbor" against liability for entities that are found to engage in the illegal practice of cramming. (*Hartwell, supra*, 27 Cal.4th at p. 276.) Concededly, "the PUC can redress violations of the law or its orders by suit (§ 2101), by mandamus or injunction (§§ 2102–2103), by actions to recover penalties (§§ 2104, 2107), and by contempt proceedings (§ 2113), but these remedies are essentially prospective in nature. They are designed to *stop utilities from engaging in current and ongoing violations* and do not redress injuries for past wrongs. [Citation.] . . . Because the PUC cannot provide for such relief for past

---

[12] The PUC has directed, in pertinent part: "Prior to approving a Service Provider or Billing Agent for the provision of billing services, the Billing Telephone Corporation shall directly or through another entity conduct a reasonable inquiry of the Service Provider's or Billing Agent's history of violations of state or federal law or rules relating to consumer protection and current ability to operate lawfully. [¶] At service initiation, all Billing Telephone Corporations shall disclose to Subscribers that the Billing Telephone Corporation has opted to provide billing and collection services to Third Parties and that such charges may be placed on the Subscriber's bill, absent action by the Subscriber. [¶] Wireless Billing Telephone Corporations shall explain at service initiation in clear and concise written terms that the Subscriber's line is open to charges from third-party Service Providers and that the Subscriber has the option to block these charges." (Cal.P.U.C. Dec. No. 10-10-034, *supra*, Attachment A, 2010 Cal.P.U.C. Lexis 424 at p. *83.)

violations, [superior court] damage actions would not interfere with the PUC in implementing its supervisory and regulatory policies to prevent future harm." (*Hartwell, supra*, 27 Cal.4th at p. 277.)

We therefore conclude defendants have not established plaintiff's lawsuit would result in a decision that would be "contrary to a policy adopted by the PUC" or "interfere with" the PUC's regulation of entities subject to the statutory prohibition against cramming. (*Hartwell, supra*, 27 Cal.4th at p. 275; cf. *Waters, supra*, 12 Cal.3d at pp. 10–12 [award of damages for negligence in providing telephone service would conflict with PUC-approved tariff limiting telephone subscriber to credit allowance for improper service]; *Brian T. v. Pacific Bell* (1989) 210 Cal.App.3d 894, 908–909 [258 Cal.Rptr. 707] [action for damages barred by PUC's order prohibiting such a remedy for defendant's alleged conduct].) On the contrary, this lawsuit would be "in aid of, rather than in derogation of, the PUC's jurisdiction." (*Hartwell, supra*, 27 Cal.4th at p. 275.) Accordingly, we cannot affirm the sustaining of defendants' demurrers based on the ground that the PUC has exclusive jurisdiction over this lawsuit.[13]

III. *Application of Primary Jurisdiction Doctrine Is Not Warranted in This Case*

■ We also conclude that this lawsuit should not be stayed or dismissed under the primary jurisdiction doctrine. " ' "Primary jurisdiction" . . . comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special

---

[13] Because we conclude plaintiff's civil action for monetary damages is not barred by section 1759(a), we need not address whether section 1759(a) would preclude plaintiff's request for injunctive relief. Ordinarily on demurrer we are not concerned with the type of relief demanded by the plaintiff. (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032] (*Gruenberg*).) However, we note plaintiff's request for injunctive relief "as is necessary to protect the interests of Plaintiff and the Class" does not articulate any form of injunctive relief that a superior court could grant. In his opposition in the superior court, plaintiff argued he was not asking the court to order defendants to adhere to any billing protocols or impose a billing system on defendants. He was only seeking an order directing defendants to stop cramming him and his fellow class members. But a broad order directing defendants to obey the statutory prohibition against cramming is "not available to plaintiff[] or to anyone else. [Citations.]" (*Cook v. Craig* (1976) 55 Cal.App.3d 773, 786 [127 Cal.Rptr. 712].) Nor has plaintiff demonstrated that the superior court could otherwise grant injunctive relief that would not interfere with the PUC's regulatory purview over cramming. Accordingly, our decision is without prejudice to motions by defendants to strike the request for injunctive relief and any allegations relating to that relief after jurisdiction of this case is returned to the superior court. Because the issue is not before us, we express no opinion on how the court should rule on such motions.

competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' " (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390 [6 Cal.Rptr.2d 487, 826 P.2d 730], italics omitted (*Farmers Ins. Exchange*), quoting *United States v. Western Pac. R. Co.* (1956) 352 U.S. 59, 63–64 [1 L.Ed.2d 126, 77 S.Ct. 161].) "[T]he primary jurisdiction doctrine advances two related policies: it enhances court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure uniform application of regulatory laws. [Citations.]" (*Farmers Ins. Exchange, supra*, 2 Cal.4th at p. 391.) However, "[n]o rigid formula exists for applying the primary jurisdiction doctrine [citation]. Instead, resolution generally hinges on a court's determination of the extent to which the policies noted above are implicated in a given case. [Citations.] This discretionary approach leaves courts with considerable flexibility to avoid application of the doctrine in appropriate situations, as required by the interests of justice." (*Id.* at pp. 391–392, fn. omitted.)

█ In this case, the critical issue to be resolved is whether defendants should be held liable for their allegedly unlawful practice of cramming. To resolve that issue, the superior court will be required to construe section 2890, "an inherently judicial function. '[C]ourts are the ultimate arbiters of the construction of a statute. [Citation.] An administrative agency cannot alter or enlarge the legislation, and an erroneous administrative construction does not govern the court's interpretation of the statute. [Citation.]' [Citation.] This case turns on 'a question of statutory interpretation, a matter with which courts have considerable experience and which does not necessitate deferral to another agency. [Citation.]' [Citation.] In this case, neither efficiency nor uniformity would be enhanced by 'administrative expertise.' [Citations.]" (*People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 126 [3 Cal.Rptr.3d 429].)

## IV. *First Amended Complaint Is Sufficient and Certain to Withstand Demurrers*

We also see no basis to dismiss this lawsuit on the ground that the allegations in the first amended complaint are insufficient or uncertain. Regardless of the titles of the causes of actions, the gravamen of plaintiff's complaint is defendants' alleged conduct of causing, directly or indirectly, the inclusion of unauthorized charges on a subscriber's telephone bill. In evaluating a demurrer, " 'the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant

to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' [Citation.]" (*Gruenberg, supra,* 9 Cal.3d at p. 572.)

█ Under the title of causes of actions based on violations of section 2890 and the UCL, plaintiff alleges his telephone bill included a charge that he did not authorize and for which he has not received a full refund. We conclude those facts are sufficient to demonstrate substantive causes of action for violations of section 2890 and the UCL. " 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' [Citation.]" (*Cel-Tech Communications, supra,* 20 Cal.4th at p. 180; see *McKell, supra,* 142 Cal.App.4th at p. 1471 ["a business practice need only meet one of the three criteria to be considered unfair competition" under the UCL].) "By proscribing 'any unlawful' business practice," the UCL " ' "borrows" violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable. [Citation.]" (*Cel-Tech Communications, supra,* 20 Cal.4th at p. 180.) Because the complaint states a cause of action for a violation of section 2890, we also conclude the complaint states a cause of action for a violation of the UCL under the unlawful prong.[14]

Defendants' challenges to the causes of the action for violations of section 2890 and the UCL appear to equate the inclusion of an unauthorized charge on a subscriber's telephone bill with a finding of liability. However, whether the inclusion of an unauthorized charge on a subscriber's telephone bill will render defendants liable for monetary relief will require consideration of legal and factual issues to be resolved at a later stage in the litigation. " 'It is an elementary rule that the sole function of a demurrer is to test the sufficiency of the challenged pleading. . . .' 'Matters of defense not apparent in the pleading are not available upon demurrer. [Citation.]' " (*Childs v. State of California* (1983) 144 Cal.App.3d 155, 163 [192 Cal.Rptr. 526], citation omitted.)

█ For similar reasons, we reject Pacific Bell's challenge to the cause of action for breach of contract. Plaintiff alleges, in pertinent part, that "Plaintiff and the Class entered into substantially identical Service Agreements with . . .

---

[14] "Ordinarily, a general demurrer does not lie as to a portion of a cause of action, and if any part of a cause of action is properly pleaded, the demurrer will be overruled." (*Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 452 [10 Cal.Rptr.3d 617].) Consequently, in light of our determination that a UCL cause of action has been stated based on an *unlawful* business practice for a violation of section 2890, we need not, and do not, address defendants' other challenges to the UCL cause of action.

[Pacific Bell] whereby Plaintiff and the Class agreed to pay an agreed upon sum in return for Defendants' activation of Plaintiff's telephone account and [Pacific Bell's] provision of communication services to Plaintiff and the Class"; Pacific Bell "expressly and/or impliedly agreed to bill Plaintiff and the Class only for products or services the purchase of which they had authorized"; and Pacific Bell "breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by thereafter billing Plaintiff and the Class for services, the purchase of which was never authorized." As applied to contracts between a public utility and its subscribers, the principles relating to the interpretation of contracts apply, including that "all applicable law enters into and becomes a part of a contract by inference [citations]; the whole of the contract must be taken together and effect be given to every part if reasonably practicable [citations]; ambiguities in the contract, especially in exculpatory provisions, must be construed most strongly against the one who caused the ambiguity to exist, i.e., the drafter [citations]; the contract must receive such interpretation as will make it reasonable [citations]; and lastly, there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which deprives the other of the benefit of the agreement [citations]." (*Masonite Corp. v. Pacific Gas & Electric Co.* (1976) 65 Cal.App.3d 1, 8–9 [135 Cal.Rptr. 170].) Thus, we conclude the facts sufficiently allege a cause of action for breach of contract against Pacific Bell. Whether plaintiff can prove Pacific Bell's conduct breached an express or implied contractual obligation is a question to be resolved at a later stage of the litigation, and is not before us on demurrer.

OAN's challenge to the cause of action for "restitution/unjust enrichment" is not persuasive. Billing agent OAN, the company submitting the charges to Pacific Bell for inclusion on plaintiff's telephone bill, is the means by which the unauthorized charges were included on plaintiff's telephone bill. Under the title of the third cause of action, labeled "restitution/unjust enrichment," it is alleged that OAN received and retained money belonging to plaintiff resulting from the billing and collecting of significant amounts of money in unauthorized premium content charges. This allegation satisfies "the elements for a claim of unjust enrichment: receipt of a benefit and unjust retention of the benefit at the expense of another. [Citation.]" (*Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726 [91 Cal.Rptr.2d 881]; see *Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 50 [57 Cal.Rptr.2d 687, 924 P.2d 996] [in accord].) The fact that plaintiff has not sued the third party service providers allegedly responsible for the unauthorized charges is not pertinent to demurrer. The availability of relief for unjust enrichment in the nature of restitution raises legal and factual issues to be resolved at a later stage of the litigation, and is not before us on demurrer.

OAN's challenge to the cause of action for tortious interference with a contract is also not persuasive. Plaintiff alleged, in pertinent part, that he and the class had contractual relationships with Pacific Bell, that OAN knew of the contractual relationships, and "intended to and did induce a breach or disruption of those relationships," by "knowingly and/or recklessly continually causing unauthorized charges to be placed on the telephone bills of telephone owners across the state of California," and plaintiff and the class suffered a loss as a direct result of OAN's conduct. These allegations are of sufficient particularity to withstand demurrer. (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587].) Contrary to OAN's argument, plaintiff was not required to plead that OAN knew that any charges were unauthorized and forwarded them to Pacific Bell nonetheless. "Even as against a special demurrer, a plaintiff is required only to 'set forth in his complaint the essential facts of his case with reasonable precision and with particularity sufficiently specific to acquaint the defendant of the nature, source, and extent of his cause of action.' [Citations.]" (*Smith v. Kern County Land Co.* (1958) 51 Cal.2d 205, 209 [331 P.2d 645] (*Smith*); see *Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 30 [157 Cal.Rptr. 706, 598 P.2d 866].) Specifically, "[a] pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim. [Citations.]" (*McKell, supra*, 142 Cal.App.4th at p. 1470.) A plaintiff "need not particularize matters 'presumptively within the knowledge of the demurring' defendant. [Citation.]" (*Smith, supra*, 51 Cal.2d at p. 209.) OAN's additional challenges to the allegations regarding its relationship with Pacific Bell are not properly before us. The status of OAN's relationship with Pacific Bell requires consideration of legal and factual issues to be resolved at a later stage of the litigation, and is not before us on demurrer.

## V.  *Conclusion*

In sum, we reverse the judgment of dismissal on the ground defendants' demurrers should have been overruled because the PUC has neither exclusive nor primary jurisdiction over this action, and, at this pleading stage, the causes of action are alleged with sufficient specificity and certainty to permit defendants to answer. Our decision is not to be read as expressing an opinion on the merits of any cause of action or the propriety of the lawsuit proceeding as a class action. Those matters are not before this court and will be resolved in further proceedings. (*Shernoff v. Superior Court* (1975) 44 Cal.App.3d 406, 410 [118 Cal.Rptr. 680].) Defendants are free "to challenge the lawsuit on other grounds and through other procedural means." (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1288 [65 Cal.Rptr.3d 469], fn. omitted.)

## DISPOSITION

The judgment of dismissal is reversed. The matter is remanded to the superior court with directions to vacate its order sustaining the demurrers to the first amended complaint, and issue a new order overruling the demurrers. Plaintiff is awarded costs on this appeal.

McGuiness, P. J., and Siggins, J., concurred.

A petition for a rehearing was denied May 18, 2012, and respondents' petition for review by the Supreme Court was denied July 18, 2012, S203194. Werdegar, J., did not participate therein.