Filed 10/25/22 Taft v. Bhajal CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FOSTER TAFT,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SUKHVINDER BHAJAL,<br><br>Defendant and Respondent. | F082305<br><br>(Tulare Super. Ct. No. VCU283752)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County. Nathan D. Ide, Judge.

Foster Taft, in pro. per., for Plaintiff and Appellant.

Salinas Law Group, Richard S. Salinas, and Stacy R. Lucas, for Defendant and Respondent.

-ooOoo-

The trial court sustained a demurrer to plaintiff and appellant Foster Taft's (Taft) operative pleading without leave to amend. We conclude that neither issue preclusion nor claim preclusion support a demurrer and reverse the judgment of dismissal.

**Case No. 268870**

On August 18, 2017, Taft filed a second amended complaint in Tulare County Superior Court case No. 268870.[1] Pertinent here, that complaint alleged defendants Sukhvinder Bhajal, M.D. (Dr. Bhajal) and Boston Scientific Corporation (Boston Scientific) wrongfully failed to provide Taft with certain medical records of his father after his death.

Taft's father was a patient of defendant cardiologists Sukhvinder Bhajal, M.D., and Dennis Johnson, M.D. He had an implanted defibrillator from Boston Scientific. He died on March 15, 2016, with a listed cause of death of ventricular fibrillation.

Taft sent a request to Boston Scientific that they provide electrocardiograms (ECGs) from all of 2016 and from December 2015. The ECGs at Boston Scientific were in an account under Dr. Bhajal's name.

On April 5, 2016, Dr. Johnson provided Taft with medical records, including: ECGs from February 12, 2016 and March 15, 2016, and a report created by "a downloading of device information" on April 4, 2016 (several weeks after Taft's father's death).

The device report indicated there had been seven "events" since the device was reset on March 8, 2016. Four of the "events" were irrelevant, having registered on April 4 when the device was explanted from Taft's father's body, well after his death. The other three "events" occurred on March 12, 14, and 15. No ECGs dated March 12 or March 14 were provided. A technician with Boston Scientific explained that the records provided were "all that was available[] and on the device."

Boston Scientific informed Taft that the device's storage capacity was limited to "about 17 minutes." The device would overwrite old information with new information.

---

[1] Because complaints from separate cases are relevant here, we will refer to this as the "- 870 complaint."

In August 2016, Taft's father's wife requested medical records from Dr. Bhajal. Taft received medical records, including an ECG from March 12th. However, there were no ECGs dated March 14th provided. Taft followed up with Dr. Bhajal's office, which responded that no further records could be provided.

Taft made a written request for the March 14th ECG to Dr. Johnson. Dr. Johnson replied that he had no March 14th ECG in his possession. Taft requested that Dr. Bhajal provide all ECGs from January, February, and March 2016. No additional ECGs were provided.[2]

In March 2017, a paid consultant informed Taft "that the March 14th event may have never been recorded and could have been considered relatively benign and the limited space would be preserved for more important events."

The complaint asserted that "[a]ll expressed concerns regarding the March 14th ECG have been ignored."

Dr. Bhajal and Boston Scientific filed demurrers to the second amended complaint. Dr. Bhajal argued that he had already produced the records in his possession as evidenced by the complaint's allegation that his office informed plaintiff they could not provide any more records.

The trial court sustained a demurrer without leave to amend. It reasoned,

> "Plaintiff asserts nothing to suggest either individual doctor has or ever had the requested data in their records. Plaintiff alleges a representative from Defendant Boston Scientific provided Plaintiff with all data on the device after decedent's death. There was no data for March 14, 2016. [Citation.] In addition[,] Plaintiff asserts a consultant advised that there may have been no recorded data for March 14, 2016."

---

[2] However, no facts were alleged establishing that any additional ECGs existed beyond those from February 12, March 12, and March 15 previously provided. Specifically, the complaint did not allege that an ECG was taken and retained every time there was an "event" logged.

We affirmed the trial court's ruling as to the medical records cause of action in our nonpublished opinion in *Taft v. Bhajal* (Apr. 16, 2020, F076824). We concluded that when the allegations of the complaint were taken as a whole, the gist of the cause of action was that the device should have created an ECG record for March 14 but failed to do so. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [courts are to "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context"].) Such an allegation cannot support a claim of improper failure to *provide* medical records upon request.[3]

In his appellate briefing in *Taft v. Bhajal*, *supra*, F076824, Taft claimed his "request for ECGs encompasses *years* of ECGs which are at [Boston Scientific] if they have not been deleted since the initiation of the actions." (Italics added). However, we concluded that the *allegations of the complaint* did not embody such a claim. Instead, "a fair reading of the [second amended complaint] shows that its first three causes of action are predicated on the 'missing' March 2016 ECGs, not some unspecified earlier ECGs dating back through 2009." (*Taft*, *supra*, F076824, at p. 8, fn. 9.)

**Case No. 283752**

On September 2, 2020, Taft filed an amended complaint against Dr. Bhajal in a different case: Tulare County Superior Court case No. 283752. We will refer to this as the "-752 complaint."

The -752 complaint, which is only 27 sentences long, included the following alleged facts. Dr. Bhajal implanted a defibrillator in Taft's father on September 24, 2009. In addition to defibrillating and pacing, the defibrillation device also created, stored, and transmitted ECGs. The device periodically uploaded ECGs to the device's manufacturer,

---

[3] We also concluded, in *Taft v. Bhajal*, *supra*, F076824, that Taft was entitled to leave to amend his wrongful death cause of action. That cause of action in case No. 268870 is the subject of another appeal before this court.

4.

Boston Scientific Corporation (Boston Scientific.) Boston Scientific still has all of the ECGs.

Dr. Bhajal "was and is the physician of record on the account that stores the ECGs of" Taft's father at Boston Scientific. The ECGs in Boston Scientific's custody are under Dr. Bhajal's control as the physician of record.

Taft requested in writing that Dr. Bhajal provide all ECG records from the device.

Dr. Bhajal filed a demurrer, asserting that the claims asserted in this new -752 complaint are "the exact same claims" as those set forth in the -870 complaint. Dr. Bhajal argued the -752 complaint was subject to demurrer pursuant to (1) the claim preclusion aspect of res judicata, and (2) collateral estoppel.

The court sustained Dr. Bhajal's demurrer without leave to amend. It is from the judgment of dismissal in case No. 283752 that Taft presently appeals.

## DISCUSSION

### Demurrer

" ' "A demurrer tests the legal sufficiency of the complaint." [Citations.] On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.] We deem to be true all material facts properly pled [citation] and those facts that may be implied or inferred from those expressly alleged.' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.)

We liberally construe the allegations of the complaint. (*Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 145.)

**Right to Medical Records Under Health & Safety Code Section 123100 Et. Seq.**

A patient's personal representative is entitled to inspect "patient records" upon request and payment of reasonable costs. (Health & Saf., § 123110, subd. (a).)[4] Patient records in this context is defined as follows,

> " 'Patient records' means records in any form or medium maintained by, or in the custody or control of, a health care provider relating to the health history, diagnosis, or condition of a patient, or relating to treatment provided or proposed to be provided to the patient. 'Patient records' includes only records pertaining to the patient requesting the records or whose representative requests the records. 'Patient records' does not include information given in confidence to a health care provider by a person other than another health care provider or the patient, and that material may be removed from any records prior to inspection or copying under Section 123110 or 123115. 'Patient records' does not include information contained in aggregate form, such as indices, registers, or logs." (*Id*., § 123105, subd. (d).)

A patient's personal representative is also entitled to paper or electronic copies of "all or any portion of the patient records" that they have a right to inspect, upon request and payment of a fee to defray costs of copying. (§ 123110 subd. (b)(1).) The health care provider must transmit the copies within 15 days after receiving the request. (*Ibid*.)

A patient's representative may bring an action against the health care provider to enforce the obligations described in section 123110. (§ 123120.)

**Res Judicata**

Res judicata is used as an umbrella term covering two separate aspects of an overarching doctrine. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823 (*Faerber*).) "Claim preclusion, the ' " 'primary aspect' " ' of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the ' " 'secondary aspect' " ' historically called

---

[4] All further statutory references are to the Health and Safety Code unless otherwise stated.

collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." (*Id.* at p. 824.)

Whether the prior judgment (i.e, our opinion in *Taft*) was correct is not relevant to res judicata, because " ' "[a]n erroneous judgment is as conclusive as a correct one." ' " (*Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 999.)

**Claim Preclusion**

"*Claim preclusion* 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*Faerber*, *supra*, 61 Cal.4th at p. 824.)

In this context, a cause of action "is the right to obtain redress for a harm suffered …." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798.) Thus, the cause of action is based upon the harm suffered – that is the determinative factor. (*Ibid.*) Accordingly, the rule is that " ' "a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the *same injury* to the *same right* …." ' " (*Ibid.*, italics added.) For this reason, a judgment based on the complaint's failure to allege facts to establish a cause of action supports claim preclusion *only if* " 'the same facts are pleaded in the second action [citation], or if, although different facts are pleaded, the new complaint contains the same defects as the former.' " (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 855.)

**The Present Complaint is Not Barred by Claim Preclusion**

Dr. Bhajal posits the allegations in the two suits are "identical." Taft argues the demurrer to the -870 complaint was upheld "on the grounds the request was for an ECG that did not exist" and was not adequately alleged to exist. He contends the request for records at issue in the -752 complaint is "distinct" from the prior request.

7.

First, we note that a patient's representative is entitled to *copies of "all or any portion of"* the patient's records. (§ 123110, subd. (b)(1), italics added.) At issue in the -870 complaint was a request for a "portion of" Taft's father's patient records. The only timeframes for records requested by Taft of Dr. Bhajal in the -870 complaint were "all ECGs 40 days prior to March 15, 2016," and "all January, February and March 2016 ECGs."[5] The -870 complaint also alleged Dr. Bhajal "failed to provide 2016 ECGs despite multiple requests" and that "all defendants continued to ignore Taft's concern about the missing ECG of March 14th." Accordingly, we concluded in the prior appellate opinion that Taft's cause of action was based on the purportedly "missing" March 2016 ECG(s) and was *not* predicated on "unspecified earlier ECGs dating back through 2009." (*Taft, supra*, F076824, at p. 8, fn. 9).

With this clarification, it is clear the -752 complaint alleges "harms" beyond those giving rise to the first cause of action in the -870 complaint. The -870 cause of action was "predicated on the 'missing' March 2016 ECGs, not some unspecified earlier ECGs dating back through 2009." (*Taft, supra*, F076824, at p. 8, fn. 9.) In contrast, the cause of action in the -752 complaint is predicated on the alleged failure to provide *all* ECGs created by the defibrillator device since its implantation in 2009.

If a health care provider wrongfully fails to heed a request for particular records, that is a different harm than allegedly failing to heed a request for *different* records.[6] In other words, the alleged failure to provide records a, b, and c, is a different harm than the alleged failure to provide records x, y, and z. Any other rule would essentially mean that once patients unsuccessfully seek certain records under section 123120, they are forever precluded from seeking any *other* records from that health care provider. That would

---

[5] As to Boston Scientific, the -870 complaint alleged they failed to respond to a request for "all 2016 and December 2015 ECGs made in April of this year."

[6] Taft emphasizes that the requests to Dr. Bhajal were made at different times (one in 2017 and one in 2020). But that is not the material distinction.

8.

violate a core element of claim preclusion: that the two suits involve the *same* cause of action. Because the two causes of action at issue here are not the same, claim preclusion does not apply.[7]

In resisting this conclusion, Dr. Bhajal cites to a letter dated May 12, 2020, from his counsel to Taft. The letter states "Dr. Bhajal previously produced all of the records he has for your father" and that he "does not have any additional records to produce." The letter was attached to a declaration that counsel filed in support of Dr. Bhajal's demurrer.

"In reviewing a judgment of dismissal entered upon the sustaining of a demurrer, we accept as true all the material facts properly pleaded and *we do not go beyond the four corners of the complaint*, except as to matters which may be judicially noticed." (*Thorburn v. Department of Corrections* (1998) 66 Cal.App.4th 1284, 1287–1288, italics added.) Dr. Bhajal may well be able to prove the assertions in the letter are correct – i.e., that he has indeed produced *all* of Taft's father's records.[8] But he must do so in the proper context, such as summary judgment.

Dr. Bhajal next observes that the -870 complaint alleged that Dr. Bhajal's office told Taft's mother that they could not provide any more records. But this statement must be understood in light of the apparent parameters of Taft's request for records. The only timeframes for records requested by Taft of Dr. Bhajal in the -870 complaint were "all ECGs 40 days prior to March 15, 2016," and "all January, February and March 2016 ECGs."[9] The -870 complaint also alleged Dr. Bhajal "failed to provide 2016 ECGs despite multiple requests" and that "all defendants continued to ignore Taft's concern

---

[7] However, there is impermissible overlap which is addressed below.

[8] Or he may be able to prove that additional records do exist, but they are not "maintained by, or in the custody or control of" (§ 123105, subd. (d)) Dr. Bhajal. However, because the complaint alleges the records in Boston Scientific's custody are under Dr. Bhajal's control, we must accept that fact as true for present purposes.

[9] As to Boston Scientific, the -870 complaint alleged they failed to respond to a request for "all 2016 and December 2015 ECGs made in April of this year."

9.

about the missing ECG of March 14th." When viewed in context, the statement from Dr. Bhajal's office is reasonably construed as indicating it had no further records *responsive to Taft's request* (i.e., ECGs from 2016). (See Code Civ. Proc., § 452.) So construed, this allegation would not preclude the possibility that Dr. Bhajal's office possessed or controlled ECGs or other records from years prior to 2016. Because Taft's -752 complaint seeks ECGs since the implantation of the device in 2009, the statement from Dr. Bhajal's office referenced in the -870 complaint is not determinative.

**Issue Preclusion**

Unlike claim preclusion, the doctrine of issue preclusion "does not bar entire causes of action." (*Faerber*, *supra*, 61 Cal.4th at p. 824.) Instead, it prevents relitigation of previously decided issues. (*Ibid*.)

"[I]ssue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Faerber*, *supra*, 61 Cal.4th at p. 825.)

For purposes of identifying what was "necessarily decided in the first suit," the grounds for affirmance given in the prior appellate opinion take precedence over the grounds given by the trial court in its ruling. (See generally *Samara v. Matar* (2018) 5 Cal.5th 322.)

**The Present Complaint is Not Subject to Demurrer on Issue Preclusion Grounds**

As explained above, the present -752 complaint alleges a wrongful failure to provide all the ECGs created by the device since its implantation in 2009. This would include, but is not limited to, the March 2016 ECGs at issue in the first cause of action in the -870 complaint. Because the March 2016 ECG issue was litigated and decided in the first suit, Taft may not relitigate. Therefore, a part of his cause of action in the -752 complaint is barred by the doctrine of issue preclusion.

10.

However, a demurrer will only lie as to the entirety of a cause of action or count, not merely to a part thereof.  (5 Witkin, Cal. Procedure (6th ed. 2022) Pleadings, § 956.)  If " '*any part* of a cause of action is properly pleaded, the demurrer will be overruled.' " (*Elder v. Pacific Bell Telephone Co.* (2012) 205 Cal.App.4th 841, 856, fn. 14, italics added.)  And, as explained above, the issue of whether Taft is entitled to relief concerning other ECGs dating back to 2009 is not "identical" to the issue of whether he is entitled to relief concerning the March 14, 2016, ECG.  Because issue preclusion does not bar the *entirety* of Taft's cause of action asserted in the -752 complaint, a demurrer does not lie thereto.[10]

## DISPOSITION

The order sustaining Dr. Bhajal's demurrer and the judgment of dismissal are reversed, and the matter is remanded.  The trial court is directed to enter a new and different order overruling Dr. Bhajal's demurrer.  Taft shall recover appellate costs.

POOCHIGIAN, J.

WE CONCUR:


HILL, P. J.


DETJEN, J.

---

[10] Because we conclude the demurrer was improperly sustained, we need not address any remaining contentions.

11.